[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 27.]

MOORE, APPELLANT, *v.* STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, APPELLEE.

[Cite as *Moore v. State Auto. Mut. Ins. Co.*, 2000-Ohio-264.]

*Automobile liability insurance—Uninsured motorist coverage—R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, construed.*

R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer.

(No. 98-2495—Submitted October 19, 1999—Decided February 16, 2000.)

APPEAL from the Court of Appeals for Huron County, No. H-98-012.

_____

{¶ 1} Our recitation of the facts of this case is based on stipulations entered into by the parties. On May 28, 1996, Randy Moore ("the decedent") died as a result of injuries sustained in an automobile accident caused by the negligence of an uninsured motorist.

{¶ 2} Appellant, Alice Moore, is the decedent's mother. She was not involved in the accident, nor did she sustain bodily injury from the accident. At the time of the accident, appellant was a named insured on a policy of automobile liability insurance issued by appellee, State Automobile Mutual Insurance Company. The policy also provided uninsured motorist coverage. The decedent was not a named insured in appellant's policy, was not a resident of appellant's household, and, at the time of the accident, was not occupying a vehicle that was covered by appellant's policy.

**{¶ 3}** It appears that appellant filed an uninsured motorist claim with appellee for damages arising out of the death of her son.[1] Appellee denied the claim and thereafter, on December 31, 1996, appellant filed a complaint against appellee in the Court of Common Pleas of Huron County. In her complaint, appellant asserted that pursuant to R.C. 2125.02, she was presumed to have suffered damages as a result of the wrongful death of her son. Appellant further contended that she was entitled to receive compensation for those damages from appellee, up to the policy limit, pursuant to the uninsured motorist provision of her policy of insurance.

**{¶ 4}** On February 9, 1998, appellee filed a motion for summary judgment, asserting that the terms of the policy precluded appellant from receiving uninsured motorist benefits. The relevant policy language provided that appellee would pay "compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury': 1. Sustained by an 'insured'; and 2. Caused by an accident." Appellee contended that appellant's claim did not satisfy this policy provision because, as stipulated by appellant, the decedent was not an insured under the policy and the insured, appellant, did not sustain bodily injury as a result of the accident.

**{¶ 5}** In her brief in opposition to appellee's motion for summary judgment, appellant contended that the policy limitation sought to be enforced by appellee was contrary to Ohio law and was therefore invalid. Appellant also asserted that she was entitled to recover under the terms of the policy. In this regard, appellant contended that the "nervous shock and psychological trauma" she suffered as a result of her son's death constituted "bodily injury."[2]

---

1. The record does not contain documentation regarding appellant's claim or appellee's denial of appellant's claim. However, paragraph eleven of appellant's complaint filed in the trial court alleges: "Although Plaintiff, Alice Moore, has requested payment of said Uninsured benefits pursuant to her policy, Defendant, State Auto, has refused to honor her request."
2. Appellant made this argument despite the fact that she had previously stipulated that she had no bodily injury as a result of the accident.

{¶ 6} The trial court found that the policy provision limiting uninsured motorist benefits to accidents in which an insured sustains bodily injury was permitted by Ohio law and held that the policy did "not provide uninsured motorist coverage to [appellant] for the death of her son." Hence, the court granted appellee's motion for summary judgment. Upon appeal, the court of appeals affirmed the judgment of the trial court on essentially the same grounds.

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

—————————

*R. Jack Clapp & Associates Co., L.P.A., R. Jack Clapp* and *Timothy A. Ita*, for appellant.

*Flynn, Py & Kruse, L.P.A., John D. Py* and *James W. Hart*, for appellee.

—————————

**DOUGLAS, J.**

{¶ 8} The central issue for our determination in this case is whether the insurance policy limitation enforced by the courts below is valid under Ohio law. In order for a limitation on uninsured motorist coverage to be valid it must not be contrary to the coverage mandated by R.C. 3937.18(A). *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 433, 23 O.O.3d 385, 386, 433 N.E.2d 555, 558; *Martin v. Midwestern Group Ins. Co.* (1994), 70 Ohio St.3d 478, 639 N.E.2d 438, paragraph two of the syllabus. R.C. 3937.18 sets forth the minimum uninsured and underinsured motorist coverage that an insurer must offer its insureds at the time of contracting for automobile liability insurance.

{¶ 9} As previously stated, the policy provision at issue herein provides that appellee "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury': 1. Sustained by an 'insured'; and 2. Caused by an accident." This

language, in effect, limits uninsured motorist coverage to accidents in which an *insured* sustains *bodily injury*.

**{¶ 10}** Appellant, relying on our decision in *Sexton*,[3] contends that this limitation is not valid because it results in less than the minimum amount of uninsured motorist coverage mandated by R.C. 3937.18(A). The facts of *Sexton* are essentially identical to those in the case at bar. In *Sexton*, Gareld Sexton's daughter was killed in an automobile accident caused by an uninsured motorist. Sexton sought to recover his damages arising out of the death of his daughter under the uninsured motorist provision of his insurance policy. However, because Sexton's daughter was not an insured as defined by the policy, the insurer denied the claim, relying on a policy provision requiring that an insured sustain bodily injury. The court looked to R.C. 3937.18 to determine whether this limitation on uninsured motorist coverage was valid.

**{¶ 11}** The version of R.C. 3937.18(A) that applied in *Sexton* provided that "[n]o automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless an equivalent amount of coverage for bodily injury or death is provided therein * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." 138 Ohio Laws, Part I, 1458.

**{¶ 12}** The *Sexton* court noted that R.C. 3937.18 did not specify that an insured must sustain bodily injury in order to recover damages. Accordingly, the court held that the policy's restrictions allowing recovery only when an insured suffered bodily injury were "void because they attempt[ed] to limit recovery contrary to R.C. 3937.18." *Sexton v. State Farm Mut. Auto. Ins. Co.*, 69 Ohio St.2d

---

3. *Sexton* was decided by this court in 1982, long before *any* present member of this court was serving on the court.

at 437, 23 O.O.3d at 389, 433 N.E.2d at 560. Clearly, if *Sexton* is still the law in this state, then appellee's policy limitation in this case is invalid.

{¶ 13} However, subsequent to the *Sexton* decision, the General Assembly, in Am.Sub.S.B. No. 20, amended R.C. 3937.18.[4] We must therefore determine whether those amendments altered the meaning of R.C. 3937.18 in such a way as to permit insurers to limit uninsured motorist coverage to accidents in which an insured sustains bodily injury.

{¶ 14} The version of R.C. 3937.18 at issue provides:

"(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:

"(1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." 145 Ohio Laws, Part I, 204, 210.

{¶ 15} Appellee contends that the plain language of the statute invalidates our decision in *Sexton*. In this regard, appellee asserts that R.C. 3937.18(A), enacted as part of Am.Sub.S.B. No. 20, permits insurers to limit uninsured motorist

---

4. In *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St. 3d 281, 695 N.E.2d 732, we held that for the purpose of determining the scope of insurance coverage the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. The record in this case does not indicate when the policy was issued to appellant; however, both parties agree that R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, is the applicable law in this case.

One of appellant's propositions of law is that Am.Sub.S.B. No. 20 is unconstitutional and as such the amendments to R.C. 3937.18 are invalid. However, the record does not reflect that appellant served the Attorney General of Ohio with notice of this contention as required by R.C. 2721.12. Therefore, pursuant to the statute we lack jurisdiction to make this determination. Accordingly, we make no ruling on the constitutionality of Am.Sub.S.B. No. 20.

coverage, in their policies of insurance, to automobile accidents in which an *insured sustains bodily injury*. Appellee's contention is based on the statutory phrases "suffered by such persons" and "suffered by any person insured under the policy" as they relate to the phrase "bodily injury [sickness or disease] or death." Appellee assumes that these phrases allow insurers to require that an *insured* under a policy of insurance *suffer bodily injury, sickness, disease, or death* in order for there to be coverage.

{¶ 16} Appellant, on the other hand, contends that the statute does not permit insurers to limit uninsured motorist coverage to automobile accidents in which an insured suffers bodily injury. Appellant's conclusion is based on her belief that the phrase "suffered by such persons" found in section (A) of R.C. 3937.18 refers to "loss" and the phrase "suffered by any person insured under the policy" found in subsection (A)(1) refers to "damages." Neither phrase, appellant claims, refers to "bodily injury." Hence, appellant contends that the court's interpretation of R.C. 3937.18 in *Sexton* was not altered by Am.Sub.S.B. No. 20 and is still good law. Accordingly, appellant urges us to find that appellee's policy limitation requiring that an insured suffer bodily injury in order to recover damages provides less coverage than is mandated by R.C. 3937.18(A) and is therefore invalid.

{¶ 17} We find that R.C. 3937.18(A) is ambiguous regarding whether an insurer may limit uninsured motorist coverage to accidents in which an insured sustains bodily injury. Thus, we must determine the intent of the legislature in enacting R.C. 3937.18(A) and construe the statute in a manner that reflects that intent. *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871, paragraph four of the syllabus. R.C. 1.49 mandates that we consider both the objective of the statute and the consequences of any particular construction in determining the intention of the legislature. For the following reasons, we find that the General

Assembly did not intend the amendments to R.C. 3937.18(A) contained within Am.Sub.S.B. No. 20 to supersede the court's ruling in *Sexton*.

{¶ 18} Initially we note that R.C. 3937.18 is remedial legislation. *Stanton v. Nationwide Mut. Ins. Co.* (1993), 68 Ohio St.3d 111, 113, 623 N.E.2d 1197, 1199. Therefore, it must be liberally construed to give effect to the legislative purpose. R.C. 1.11; *Curran v. State Auto. Mut. Ins. Co.* (1971), 25 Ohio St.2d 33, 38, 54 O.O.2d 166, 169, 266 N.E.2d 566, 569; *Martin v. Midwestern Group Ins. Co.*, 70 Ohio St.3d at 480, 639 N.E.2d at 440.

{¶ 19} The purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated. *Id.* See, also*, Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 555, 668 N.E.2d 913, 915. It is clear that claims such as appellant's fit within this purpose. R.C. 2125.01 recognizes a cause of action for wrongful death and R.C. 2125.02(A)(1) acknowledges that parents of wrongful death victims are presumed to have suffered damages. Therefore, the parents of a wrongful death victim are legally entitled to recover damages from the tortfeasor responsible for their child's death. However, under appellee's suggested interpretation of R.C. 3937.18(A), the parent of the wrongful death victim would go uncompensated due to the tortfeasor's uninsured status, notwithstanding the fact that the parent had uninsured motorist coverage.

{¶ 20} Thus, applying appellee's proposed interpretation of R.C. 3937.18 would thwart the underlying purpose of uninsured motorist insurance, *i.e.*, to protect persons who are entitled to recover damages from uninsured motorists, and would conflict with R.C. Chapter 2125, the wrongful death statute. This result would in turn violate R.C. 1.47(C), which provides a presumption against statutory construction that would produce unreasonable or unjust consequences. Therefore, we decline to adopt appellee's proposed interpretation.

**{¶ 21}** Furthermore, if the words "for loss" and "damages" were removed from R.C. 3937.18(A) and (A)(1), then the statute would have precisely the meaning that appellee suggests. Thus, appellee's interpretation of the statute renders the words "for loss" and "damages" superfluous. Such a result contravenes the general rule of statutory construction codified under R.C. 1.47(B), which provides that the General Assembly, in enacting a statute, intends that the entire statute be effective. Moreover, such a result undermines our holding that "[i]n determining the legislative intent of a statute 'it is the duty of this court to give effect to the words used [in a statute], not to delete words used or to insert words not used.' " *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 28, 53 O.O.2d 13, 15, 263 N.E.2d 249, 251, quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 446, 254 N.E.2d 8, 9.

**{¶ 22}** Finally, we note that, in addition to the above-mentioned amendments to R.C. 3937.18(A)(1), Am.Sub.S.B. No. 20 also contains amendments to R.C. 3937.18(A)(2). R.C. 3937.18(A)(2) addresses underinsured motorist coverage. This is relevant to our discussion in this case because in the uncodified portion of Am.Sub.S.B. No. 20, the General Assembly explicitly set forth that its intent in amending R.C. 3937.18(A)(2) was to supersede the effect of this court's holding in *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809. Section 7, Am.Sub.S.B. No. 20, 145 Ohio Laws, Part I, 238. We believe that if the General Assembly had intended the changes in subsection (A)(1) to supersede the court's holding in *Sexton*, it would have made its intentions equally clear by declaring such in the uncodified portions of the law.[5]

**{¶ 23}** However, we find nothing in the uncodified section of Am.Sub.S.B. No. 20 that indicates that the amendments to R.C. 3937.18(A)(1) were intended to

---

5. It should be noted that the General Assembly's "supersede" language relates to case law involving statutory interpretation as opposed to constitutionally based case law.

supersede our decision in *Sexton*. We therefore reject appellee's assertion that the amendments were clearly meant to supersede *Sexton*.

{¶ 24} Accordingly, we hold that R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer. Therefore, we find that the limitation in appellee's policy requiring that the insured suffer bodily injury in order to recover uninsured motorist benefits is an attempt to provide lesser coverage than that which is mandated by law. As such, we find that the limitation is invalid and unenforceable. Having held in appellant's favor on this issue, we need not address appellant's assertion that she suffered bodily injury because of the death of her son.

{¶ 25} For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

BROGAN, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for RESNICK, J.

_____

**LUNDBERG STRATTON, J., dissenting.**

{¶ 26} In *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, this court greatly extended the reach of uninsured motorist coverage required by R.C. 3937.18. In *Sexton,* Gareld Sexton's daughter was killed in an automobile accident. The driver of the automobile was not insured. Sexton sought recovery for his damages under the uninsured provision of his automobile insurance policy with State Farm Mutual Automobile Insurance Company. State Farm argued that limitations within Sexton's insurance policy precluded such recovery. In effect, the policy provisions limited coverage to recovery for bodily injury or death sustained by an insured as defined in the policy. The court in *Sexton* examined whether these limitations were valid in light of R.C. 3937.18. At that time R.C. 3937.18(A) read:

"No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom." 138 Ohio Laws, Part I, 1458.

{¶ 27} In examining R.C. 3937.18(A), the court in *Sexton* stated, "The critical language for this case is that the coverage is 'for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom." *Id*. at 434, 23 O.O.3d at 387, 433 N.E.2d at

558. Construing this language, the court in *Sexton* stated, "Although the *statute does not indicate who must have sustained the bodily injury, it does not specify that it be the insured*. Because the statute should be construed liberally, * * * we will not add that limitation." (Emphasis added; citation omitted.) *Id*. at 434, 23 O.O.3d at 387, 433 N.E.2d at 558-559.

{¶ 28} In 1994, the General Assembly amended R.C. 3937.18 to read:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death *suffered by such persons*:

"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, *suffered by any person insured under the policy*." (Emphasis added.) 145 Ohio Laws, Part I, 204, 210.

{¶ 29} The majority relies on *Sexton* to find that Alice Moore should be able to recover the damages she incurred because of the death of her emancipated son, Randy, despite the fact that her policy limits coverage to insured individuals who suffer a bodily injury or death. The majority acknowledges that Am.Sub.S.B. No. 20 amended R.C. 3937.18, but declines to acknowledge the effect of the added language. Instead, the majority finds that the phrase "suffered by such persons" is ambiguous with regard to whether it modifies the word "loss" or the words "bodily

11

injury or death." The majority also finds that the phrase "suffered by any person insured under the policy" is ambiguous with regard to whether it modifies the word "damages" or the words "bodily injury, sickness, or disease." I disagree. I believe that the amendments made to R.C. 3937.18, pursuant to Am.Sub.S.B. No. 20, unambiguously indicate that the General Assembly intended that insurers may limit uninsured motorist coverage to an insured who suffers bodily injury, sickness, disease, or death.

{¶ 30} Courts must look to the language of the statute itself to determine legislative intent. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381. It is well settled that "[w]ords and phrases shall be read in context and construed according to the *rules of grammar* and common usage." (Emphasis added.) R.C. 1.42. Pursuant to the rules of grammar, absent an intent to the contrary, a qualifying phrase refers "solely to the last antecedent." *Carter v. Youngstown* (1946), 146 Ohio St. 203, 209, 32 O.O. 184, 186, 65 N.E.2d 63, 66. See, also, *Indep. Ins. Agents of Ohio v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817; *Lancaster v. Fairfield Cty. Budget Comm.* (1998), 83 Ohio St.3d 242, 699 N.E.2d 473.

{¶ 31} The phrase "suffered by such persons," as set out in amended R.C. 3937.18(A), is immediately preceded by the words "bodily injury or death." The phrase "suffered by any person insured under the policy," as set out in amended R.C. 3937.18(A)(1), is immediately preceded by the words "bodily injury * * * including death." There is no language in amended R.C. 3937.18 indicating that these phrases modify anything other then the terms "bodily injury" or "death." Absent an ambiguity in the language, a statute should be applied, not interpreted. *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.* (1987), 32 Ohio St.3d 24, 512 N.E.2d 332.

{¶ 32} Further, the majority's holding effectively renders the phrases "suffered by such persons" and "suffered by any person insured under the policy"

meaningless. These phrases have no other logical purpose than to modify the terms "bodily injury" and "death" within the respective provisions of R.C. 3937.18, so as to allow insurers to limit coverage to instances where the *insured* sustains bodily injury or death. The majority's holding fails to give any meaning to these phrases, thereby effectively nullifying this language added to R.C. 3937.18 by the General Assembly pursuant to Am.Sub.S.B. No. 20. Thus, the majority's holding conflicts with the well-settled rule that *none of the language* employed in a statute *should be disregarded. Carter, supra,* at paragraph one of the syllabus.

{¶ 33} The majority also finds support for its position by noting that there is nothing in the uncodified section of Am.Sub.S.B. No. 20 that indicates that the amendments to R.C. 3937.18(A)(1) were intended to supersede *Sexton*. However, there is no requirement that the General Assembly indicate that legislation is superseding a specific court decision. Further, I believe that we should not encourage such a practice because it appears to pit the General Assembly against the courts.

{¶ 34} Finally, I believe that the result reached by the majority is unreasonable. Neither uninsured motorist insurance nor underinsured motorist insurance was intended to provide coverage for parties outside the insurance contract. Moore did not own the car involved in the accident. Further, Moore's son was not living at home at the time of the accident. Therefore, Moore's son was not an insured under Moore's insurance policy. The majority's interpretation allows recovery for risks that are impossible to assess. The majority's holding begs the following questions: Does one applying for coverage now need to disclose every emancipated child's place of residence, as well as their lifestyle, so that the insurer can write the coverage to anticipate this possible exposure? How much additional premium should be assessed? Will one's own child serving in the Peace Corps in another country, where uninsured motorists possibly abound, need to be factored into premiums because that child represents a risk, since the stateside

parents can now recover for their child's death under the parents' uninsured motorist coverage even though the child does not live at home? If one has ten children living away from home, must the parents now pay a much higher premium to cover all those exposures created by *Sexton* and now by *Moore*?

{¶ 35} I believe that the phrases "suffered by such persons" and "suffered by any person insured under the policy" were added to R.C. 3937.18 by the General Assembly for the purpose of countering the unwarranted extension of uninsured coverage allowed in *Sexton*. Liability coverage requires that an insured live in the same house and drive a covered automobile. Uninsured and underinsured coverage are meant to provide coverage or provide additional coverage where the tortfeasor has no liability coverage or has insufficient liability coverage. No one, as yet, has argued that one's liability policy would cover one's emancipated child living in another country driving his own car. Yet that is exactly what the majority has done with uninsured and underinsured coverage through this decision.

{¶ 36} I agree that the purpose of R.C. 3937.18 is "to protect persons injured in automobile accidents from losses which, because of the tort-feasor's lack of liability coverage, would otherwise go uncompensated." *Abate v. Pioneer Mut. Cas. Co.* (1970), 22 Ohio St.2d 161, 165, 51 O.O.2d 229, 231, 258 N.E.2d 429, 432. However, I believe that the majority has distorted this purpose by finding that this protection goes beyond those insured under the policy who sustain bodily injury, disease, sickness, or death. The majority's holding unjustifiably subjects insurance companies to provide coverage beyond what is required by R.C. 3937.18.

{¶ 37} Thus, I would find that R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, unambiguously allows an insurer to limit uninsured motorist coverage to an insured who suffers bodily injury, sickness, or death. Therefore, I would find that to the extent that *Sexton* held that a provision in an insurance policy limiting uninsured motorist coverage to an insured who sustains bodily injury or death is

14

invalid because it conflicts with R.C. 3937.18, it is overruled.  As a result, I believe that the majority opinion is without support.  Accordingly, I dissent.

MOYER, C.J., and COOK, J., concur in the foregoing dissenting opinion.

_____