**PLESZ et al.**

v.

**PLESZ.** ▮

Court of Common Pleas of Ohio,
Medina County.

Nos. 98 CIV 917 and 98 CIV 918.

Decided April 6, 2000.

*Stephen J. Brown Co., L.P.A.,* and *Stephen J. Brown,* for plaintiffs.

*Buckingham, Doolittle & Burroughs, L.L.P.,* and *David W. Hilkert,* for defendant.

JAMES L. KIMBLER, Judge.

This case is a consolidated case involving claims by Everett and Tamara Plesz for the death of Darlene Plesz. Tamara Plesz is seeking compensation for Darlene's death under the uninsured/underinsured provisions of her auto policy issued by State Farm Mutual Insurance Company. Everett is seeking compensation for Darlene's death under his UIM coverage in excess of the $100,000 he has been offered. Both plaintiffs also seek a declaration that certain provisions of the Ohio Revised Code are unconstitutional, although the Ohio Attorney General was not made a party. The parties have entered into certain factual stipulations. This matter is now before the court for adjudication as to the issues on which the parties are seeking a declaratory judgment.

## STATEMENT OF THE FACTS

On September 19, 1995, a car negligently driven by Darlene Plesz's daughter, Jill, struck Darlene Plesz, wife of Everett and mother of Tamara and Jill. A person who is not a member of the Plesz family owned the car. The car was uninsured. Darlene lived for a week after being struck. During that time her hospital expenses were over $33,000.

At the time of the accident, both Everett and Tamara were insured by a policy issued by State Farm Mutual Insurance Company. Everett's policy was issued in 1981 and Tamara's policy was issued in 1993. At the time of the accident, Tamara's policy was less than two years old.

Everett's policy and Tamara's policy each contained $100,000/300,000 for uninsured/underinsured coverage. The $100,000 was for each person, and the $300,000 was for each accident. Prior to Darlene's death, State Farm claims it sent an amendment to each policy called "Endorsement 6090MM."

Endorsement 6090MM, which both Everett and Tamara do not remember receiving, limits the coverage of all bodily injuries to a single person under the UIM coverage to $100,000. The endorsement was supposedly effective for each policy in November 1994, at the time of a six-month renewal.

The endorsement was made after Senate Bill 20 was enacted. Senate Bill 20, which is now contained in R.C. 3937.18(H), allows an insurance company to limit all claims for bodily injury to any one person, "including death," to the same amount of coverage that is available for injuries sustained by one person. In this case, State Farm claims that this means that Everett can receive only $100,000 under his policy for Darlene's death.

Tamara's policy contained a provision that restricts coverage for UIM claims to injuries to persons who are the insured or members of the insured's household. State Farm claims that this restriction denies coverage to Tamara under her UIM coverage for her mother's death, since they were not members of the same household.

The parties also disagree about the medical pay provisions of the two policies. Tamara claims that she can recover medical payments under her policy for her mother's treatment. State Farm denies this claim. State Farm paid $10,000 under Everett's policy for Darlene's medical bills.

State Farm paid $100,000 under Everett's UIM coverage in settlement of Darlene's survival action. It denied coverage under Tamara's UIM coverage and denied additional benefits under Everett's.

## ISSUES PRESENTED

1. Was Jill an insured under Everett's liability policy when she struck her mother?

2. Can Tamara recover under her UIM coverage for her mother's death?

3. Can Everett recover more than $100,000 under his UIM coverage for Darlene's death?

4. Can both Everett and Tamara recover under their own UIM provisions for Darlene's death?

5. Is State Farm liable for more than $10,000 in medical payments under both Tamara's and Everett's policies?

6. Is R.C. 3937.18 unconstitutional?

## DISCUSSION

ISSUE NO. 1: THE COURT FINDS THAT JILL WAS NOT AN INSURED UNDER HER FATHER'S INSURANCE POLICY WHEN SHE STRUCK HER MOTHER

■ At the time she struck her mother, Jill was a minor living with her parents. She was a member of Everett's household. She was also his daughter.

The policy specifically exempts liability coverage for bodily injury to an insured or any member of an insured's family residing in the insured's household caused by an insured or a member of the insured's household.

Under Everett's policy, both Everett and Darlene were insureds under Everett's policy. Everett was an insured because he is named as such in the policy and Darlene was an insured because she was his spouse. Jill was also an insured because she was a member of Everett's family living in his household.

■ An insurance company may not draft a policy so as to exclude a household member from being an uninsured/underinsured motorist. *State Farm Auto. Ins. Co. v. Alexander* (1992), 62 Ohio St.3d 397, 583 N.E.2d 309. Such an exclusion violates the public policy articulated in R.C. 3937.18.

■ The same logic does not apply to the present exclusion. The court is not aware of any statute that requires coverage under the liability provision of an insurance policy to members of an insured's household. In fact if a member of an insured's household causes injury to an insured or another household member by means of an automobile accident, the injured insured may proceed under the UIM part of the insured's automobile policy. *State Farm Auto. Ins. Co. v. Alexander, supra.*

The court finds that the provision in the policy excluding liability coverage to Jill under Everett's policy is enforceable and valid. Jill has no liability coverage under Everett's policy for the accident involving her mother and, therefore, was an uninsured motorist when she struck her mother.

ISSUE NO. 2. THE COURT FINDS THAT TAMARA MAY RECOVER UNDER HER UIM COVERAGE FOR HER MOTHER'S DEATH.

■ State Farm relies on R.C. 3937.18(A)(1) to deny coverage under Tamara's UIM provision. R.C. 3937.18(A)(1) was enacted in response to *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555. The *Sexton* decision allowed a policyholder to recover for his daughter's death under his UIM coverage even though he was not injured in the accident that killed her.

The Ohio Supreme Court's reasoning in *Sexton* was that policy language limiting recovery under UIM provisions to those situations where the insured suffered bodily injury was contravening the public policy behind R.C. 3937.18. It was contravening the public policy by restricting UIM coverage in wrongful death cases. If recovery in wrongful death cases was restricted, then the public policy of allowing a policyholder to recover under UIM to the same extent such policyholder would recover from an insured tortfeasor was frustrated.

The General Assembly amended R.C. 3937.18(A)(1) by adding the following language: "for the protection of persons who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, *suffered by any person insured under the policy.*" 145 Ohio Laws, Part I, 204, 210.

State Farm argues that this language specifically allows it to exclude UIM coverage in cases where the insured does not suffer bodily injury. This argument was rejected by the Ohio Supreme Court in *Moore v. State Auto. Mut. Ins. Co.* (2000), 88 Ohio St.3d 27, 723 N.E.2d 97.

*Moore* held that R.C. 3937.18(A)(1) does not permit an insurer to limit recovery under UIM provisions to those cases where the insured suffers a bodily injury. *Moore* held that R.C. 3937.18(A)(1) is ambiguous. 88 Ohio St.3d at 31, 723 N.E.2d at 101.

The ambiguity results from the language used by the General Assembly that states that uninsured motorist coverage is to be offered for the protection of insureds who are "legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, disease, including death, suffered by any person insured under the policy." *Moore* states that it is not clear from this language that an insured has to suffer a bodily injury causing death to the insured to recover damages caused by a death of another. *Id.* at 31, 723 N.E.2d at 101. *Moore* further states that it was not the intent of the General Assembly in enacting R.C. 3937.18(A) to overrule the *Sexton* decision. *Id.* at 31, 723 N.E.2d at 101. Therefore, the court held that R.C. 3937.18(A)(1) does not

allow insurance companies to write provisions requiring that an insured suffer bodily injury to recover under UIM provisions.

As a result of the *Moore* decision, Tamara may proceed under her UIM coverage to make a claim for her mother's death. The next issue is what are the limits of the coverage under Tamara's UIM provision?

Tamara argues that the limits are the $300,000 per accident limit. State Farm argues that it is the $100,000 per person limit. State Farm argues that because the policy language specifically limits all claims for bodily injury, including death, to any one person to the per person limit, Tamara cannot recover more than $100,000. This restriction is set forth in Endorsement 6090MM. The court agrees, but not for the reasons advanced by State Farm.

Under R.C. 2125.01 *et seq.*, Tamara is presumed to be injured as a result of her mother's death. She is entitled to recover compensatory damages, including damages for loss of companionship. While the action must be brought in the name of the estate representative, a jury could determine what her loss, independent of her father and other family members, is worth.

Because she is the only named insured on her policy, she is the only one entitled to collect from State Farm under that policy for the wrongful death of her mother. Since no other person, or entity, can recover from State Farm under Tamara's policy for Darlene's death, she is limited to the $100,000 per person limits.

ISSUE NO. 3: EVERETT CANNOT RECOVER MORE THAN $100,000 FOR DARLENE'S DEATH UNDER HIS UIM COVERAGE.

Everett's policy limits coverage for all claims arising from the "bodily injury, including death" of an insured to the per person limit under the UIM provision. The above language appears in an endorsement that was added to the original policy after the original policy was purchased. In his complaint Everett states that the insurance policy attached to his complaint, which includes the endorsement, is the insurance policy in effect at the time of Darlene's death. Although he now has no memory of receiving this endorsement, the effect of his statement in the pleading is to establish that the policy includes the endorsement given that State Farm did not deny said allegation. See Civ.R. 8(D).

Endorsement 6090MM was made pursuant to R.C. 3937.18(H). Subsection (H) was enacted after *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, was decided. *Savoie* held unenforceable policy provisions that stated that all claims arising out of the bodily injury, including death, to any one person was subject to per person limits. In enacting subsection (H) in Am.Sub.S.B. No. 20 the Ohio General Assembly stated its purpose was to "supersede the effect of

the holding of the Ohio Supreme Court in its October 1, 1993 decision in *Savoie*." Section 10, Am.Sub.S.B. No. 20.

Everett argues that Am.Sub.S.B. No. 20 is unconstitutional, including subsection (H). The unconstitutionality of Am.Sub.S.B. No. 20, however, was not the basis for the *Moore* decision. The basis for the *Moore* decision was the ambiguity of R.C. 3937.18(A)(1). The ambiguity was partially based on the Supreme Court's determination that the passage of subsection (A) was not intended by the General Assembly to supersede the *Sexton* decision. *Moore* at 88 Ohio St.3d 31–32, 723 N.E.2d 101–102.

In holding that the General Assembly did not intend to supersede the *Sexton* decision, Justice Douglas in his opinion contrasted the language used in passing subsection (A)(1) with that used in passing subsection (A)(2). In passing subsection (A)(2) the General Assembly specifically stated that it was superseding the *Savoie* decision. According to Justice Douglas, the absence of language regarding the General Assembly's intent helps determines the intent of the General Assembly. *Moore* at 88 Ohio St.3d 32, at 723 N.E.2d 102.

In enacting subsection (H), the General Assembly specifically said it intended to supersede *Savoie*. Further, the language used in subsection (H) is different from the language used in subsection (A)(1). This court finds that the language used in subsection (H) is not ambiguous. It further finds that an insurance policy can restrict the coverage on all claims arising out of the bodily injury, including death, of a single person to the per person limits of the policy. Because the clauses in Everett's policy that do that are valid, Everett may only receive $100,000 from State Farm under the uninsured motorist provision of his policy.

ISSUE NO. 4: TAMARA CAN RECOVER UNDER HER UIM COVERAGE WITHOUT A SET OFF OF WHAT WAS PAID BY STATE FARM TO EVERETT.

R.C. 3937.18(G) permits an insurance company to issues policies that prevent "stacking" of UIM coverage under more than one policy. R.C. 3937.18(G)(1) and (2) prevent "interfamily" and "intrafamily" stacking. Interfamily stacking is stacking coverage of policies issued to family members who are not members of the same household. Intrafamily stacking is stacking coverage of policies issued to family members who are in the same household.

This case does not involve intrafamily stacking because Tamara and Everett were not members of the same household. Does it involve stacking at all and does it involve interfamily stacking? If the answer to the first question is no, then this court need not reach the second question.

"Stacking is the lumping together or adding together of payments or the aggregation of coverage." *Nickschinski v. Sentry Ins. Co.* (1993), 88 Ohio App.3d

185, 623 N.E.2d 660. In this case, Everett was paid the $100,000 in settlement of the survival action of Darlene. No proceeds were paid under Everett's UIM coverage for the wrongful death of Darlene. Tamara only has a claim under the wrongful death statute. She had no claim under the survival action. Therefore, allowing her to proceed under her UIM coverage for her wrongful death claim is not stacking because it is not lumping together payments for the same cause of action.

Because allowing Tamara to collect under her UIM coverage for her mother's wrongful death is not stacking, the anti-stacking provisions of Endorsement MM 6090 do not apply. Tamara can recover under her own UIM coverage without a setoff of the money paid to Everett.

ISSUE NO. 5: STATE FARM CAN LIMIT ITS LIABILITY TO EVERETT FOR DARLENE'S MEDICAL BILLS TO $10,000. STATE FARM HAS NO LIABILITY UNDER TAMARA'S POLICY FOR MEDICAL PAYMENTS FOR INJURIES TO DARLENE.

Tamara cannot recover under the medical payments provision in her policy because her mother was not a member of her household when she was struck. Everett cannot recover more than $10,000 because that is the limits of his medical payment coverage for medical bills for any one person.

ISSUE NO. 6: THIS COURT IS PRECLUDED FROM RULING ON THE CONSTITUTIONALITY OF R.C. 3937.18 OR ANY OF ITS SUBSECTIONS.

R.C. 2721.12 requires a party to serve the Ohio Attorney General with a copy of the proceedings when seeking a declaration that a section of the Ohio Revised Code is unconstitutional. The plaintiffs did not do this in either case, although in both cases they are seeking a declaration that R.C. 3937.18 is unconstitutional. Since this was not done, this court is precluded from ruling on the constitutionality of R.C. 3937.18 or any of its subsections. *Malloy v. Westlake* (1977), 52 Ohio St.2d 103, 6 O.O.3d 329, 370 N.E.2d 457.

HOLDING AND ORDER

This court hereby adopts the holdings under each heading as its order and hereby enters judgment accordingly.

SO ORDERED, ADJUDGED AND DECREED.

*Judgment accordingly.*