OPINION
{¶ 1} Plaintiffs-appellants Nicole Bell and James and Elizabeth Bell appeal from the May 23, 2002, Judgment Entry of the Guernsey County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Heather Bell and appellant Nicole Bell are the daughters of appellant James Bell. On April 24, 1999, at approximately 6:00 p.m., appellant Nicole Bell and Heather Bell were injured in an automobile accident when Patricia Currier operated her motor vehicle on the wrong side of the road, colliding with the vehicle driven by Heather Bell. Both Heather and Nicole, who was a minor at the time of the accident, were living with their grandmother, Mary Bell, although their father, appellant James Bell, had custody of Nicole.
 {¶ 3} At the time of the accident, Heather Bell was driving an automobile owned by Mary Bell, who was insured under an automobile insurance policy issued by State Farm Insurance Company which provided UM/UIM coverage. In turn, Patricia Currier, the tortfeasor, was insured by Orion Insurance with liability limits of $30,000.00 per person/$50,000.00 per accident.
 {¶ 4} Appellant James Bell, at the time of the accident, was employed by Pallet Recycling, Inc. Appellees American Motorists Insurance Company ("AMICO") and American Manufacturers Mutual Insurance Company ("AMM ") provide, under the parent group Kemper Insurance Companies, a combination policy of insurance to Pallet Recycling, Inc. Pallet Recycling, Inc. was insured under a business automobile liability policy issued by appellee AMICO which included an endorsement for Uninusured/Underinsured Motorists (UM/UIM) coverage in the amount of One Million Dollars. Pallet Recycling also was insured under a commercial general liability (CGL) Policy issued by appellee AMM which contained One Million Dollars in personal injury coverage.
 {¶ 5} Subsequently, Heather Bell[1], appellant Nicole Bell, a minor, by and through her parents and next friends James Bell and Elizabeth Bell, appellant James Bell and appellant Elizabeth Bell, the ex-wife of James Bell,[2] filed a complaint against appellees AMM and AMICO and against Patricia Currier and State Farm Insurance Company in the Guernsey County Court of Common Pleas. On March 4, 2002, appellees filed Consolidated Motions for Summary Judgment. After appellees filed a supplemental memorandum in support of the same, appellants filed a brief in opposition to appellees' consolidated motions on April 8, 2002. Appellees then filed a reply brief.
 {¶ 6} Pursuant to an entry filed on April 19, 2002, the trial court granted appellees' Consolidated Motions for Summary Judgment. The trial court, in its entry, found, in relevant part, as follows: "[t]o be an insured under the AMICO/AMM UM/UIM as a family member a person must be `related to you by blood, marriage, or adoption who is a resident of your household.' (Emphasis added). The Court finds that it is undisputed that Heather and Nicole Bell resided with their paternal grandmother all of their lives.Therefore, the Plaintiffs are not `family members' under the subject policies such that coverage under AMICO and AMM does not extend to Heather and Nicole Bell as they are not insureds."
 {¶ 7} Thereafter, on or about April 22, 2002, counsel for appellants advised the trial court that it had not ruled on appellants James and Elizabeth Bell's consortium claim. As memorialized in an entry filed on May 23, 2002, the trial court found that the AMM CGL policy defined an insured to include employees acting within the "scope of their employment and while performing duties related to the conduct of your business." Since Heather and Nicole Bell were not employees of Pallet Recycling, the trial court determined that the AMM CGL policy precluded the consortium claim of appellants James and Elizabeth Bell. The trial court, in its entry, further held that their consortium claim was barred under the AMICO business auto policy since the policy only provided coverage for "bodily injury" sustained by an insured and James Bell, the employee, sustained no bodily injury.
 {¶ 8} It is from the trial court's May 23, 2002, entry that appellants now appeal, raising the following assignments of error:[3]
 {¶ 9} "I. The court below failed to consider plaintiffs-appellants' arguments that all plaintiffs are `insureds' for um/uim coverage by operation of law under the commercial general liability policy issued by defendant-appellee american manufacturers mutual insurance company's (amm's).
 {¶ 10} "II. The court below incorrectly found that plaintiff-appellant Nicole Bell is not an `insureds' under the terms of the uninsured/unerinsured motorists (umuim) coverage endorsement to defendant-appellee american motorists insurance company's (amico's) business auto policy.
 {¶ 11} "III. The court below gave effect to the `scope of employment' limitation in the cgl in contravention of the holding of the supreme court of Ohio in Scott-Pontzer.
 {¶ 12} "IV. The court below improperly disallowed the consortium claim of plaintiff-appellant James Bell."
 {¶ 13} Appellees, on cross-appeal, raise the following assignments of error[4]:
 {¶ 14} "I. The american manufacturers mutual commercial general liability policy is not a motor vehicle liability policy subject to O.R.C. 3937.18.
 {¶ 15} "II. The trial court improperly held that american motorist insurance company's business auto policy does not contain a named insured."
 {¶ 16} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 17} It is based upon this standard that we review appellants' assignments of error and appellees' cross assignments of error.
 I {¶ 18} Appellants, in their first assignment of error, argue that the trial court erred in failing to find that appellants are "insureds" for UM/UIM coverage by operation of law under the CGL policy issued by appellee AMM to Pallet Recycling, Inc. Such policy had an effective date from February 22, 1999, to February 22, 2000.
 {¶ 19} The first issue for determination is whether the CGL policy issued by AMM to Pallet Recycling, Inc. is an automobile liability or motor vehicle liability policy subject to R.C. 3937.18. If such policy is an automobile liability or motor vehicle liability policy, then appellee AMM was required to offer UM/UIM coverage to Pallet Recycling, Inc or such coverage arises by operation of law. See Abate v. Pioneer Mut. Cas.Co. (1970), 22 Ohio St.2d 161, 258 N.E.2d 429. However, if the policy is not an automobile liability or motor vehicle liability policy, then R.C.3937.18 does not apply and UMUIM coverage does not arise by operation of law. Id.
 {¶ 20} The relevant version of R.C. 3937.18, which is the version as amended by H.B. 261 (effective September 3, 1997), provides, in part, as follows: ""As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 21} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 22} "(2) Any umbrella liability policy of insurance."
 {¶ 23} See R.C. 3937.18(L).
 {¶ 24} In the case sub judice, the AMM policy does not specifically identify any motor vehicles on the policy declarations page. While appellants argue that this Court has held that "a CGL that provides liability coverage through `parking an auto' and mobile equipment provisions such as those in the AMM policy is a motor vehicle liability policy subject to the requirements of R.C. 3937.18", we note that the cases cited by appellant are not persuasive. The cases cited by appellants involve the pre-H.B. 261 version of R.C. 3937.18 which did not include the language of subsection (L), cited above, defining "automobile liability or motor vehicle liability insurance."
 {¶ 25} Since the AMM CGL policy does not specifically identify any motor vehicle, it is not an automobile liability or motor vehicle liability policy subject to R.C. 3937.18. See Bowles v. Unica NationalIns. Grp., Licking App. No. 02CA68, 2003-Ohio-254. For such reason, appellee AMM was not required to offer UM/UIM coverage under the same and such coverage does not arise by operation of law. Accordingly, appellants were not entitled to UM/UIM coverage under the AMM CGL policy.
 {¶ 26} Appellants' first assignment of error is, therefore, overruled.
 II {¶ 27} Appellants, in their second assignment of error, argue that the trial court erred in holding that appellant Nicole Bell was not an insured under the business automobile policy issued by appellee AMICO to Pallet Recycling. We disagree.
 {¶ 28} The AMICO Ohio uninsured motorists coverage endorsement to the business automobile policy provides, in relevant part, as follows:
 {¶ 29} "B. WHO IS AN INSURED
 {¶ 30} "1. You
 {¶ 31} "2. If you are an individual, any `family member'
 {¶ 32} "The policy defines family member as follows:
 {¶ 33} "1. Family member means a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child." (Emphasis added).
 {¶ 34} In the case sub judice, the parties stipulated that both appellant Nicole and her sister, Heather, were residing with their paternal grandmother at the time of the accident. While appellant James Bell had custody of Nicole at such time, and provided for her support, he testified, during his deposition, that both Nicole and Heather had resided with their paternal grandmother, who lives two doors down from him, "pretty much since birth." Deposition of James Bell at 10. According to appellant James Bell, Heather and Nicole resided with their paternal grandmother since "more or less they got along better," Transcript of James Bell at 10. The trial court, based upon the above factors, held that "Plaintiffs are not `family members' under the subject policies such that coverage under AMICO does not extend to Nicole Bell" since she was not an insured. Appellants now argue that Nicole, at the time of the accident, should also be deemed to have been a resident of appellant James Bell's household.
 {¶ 35} In Reardon v. Owners Ins. Co. (Feb. 22, 2000), Tusc. App. Nos. 1999AP040025, 1999AP040027, 1999AP040028 and 1999AP040029, this Court applied the "some duration and with some regularity test" to the issue of dual residency. The leading case which established this test isFarmer's Insurance of Columbus, Inc. v. Taylor (1987), 39 Ohio App.3d 68,528 N.E.2d 968. The Taylor court held: "Where a policy of insurance providing uninsured motorist coverage does not define the term," a resident of your household" a minor who lives the majority of the time with her mother and regularly for some duration with her father is resident of both households. A "resident of your household" refers to one who is in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes the temporary or transient visitor. "Syllabus by the court. (Emphasis added).
 {¶ 36} Applying such test, this Court, in Reardon, held that Valerie Crosier was entitled to UM/UIM coverage under her grandfather's insurance policy although she was living with her father, Vernon Crosier, at the time of the accident on November 3, 1995. This Court, in its opinion, stated, in relevant part, as follows: "It is clear from the record Audrine and Lucille Crosier [the grandparents] had provided Valerie Crosier's residence not only with regularity but for a long duration. Audrine and Lucille Crosier, were, by court decree, the parties required to provide a residence for Valerie until November 28, 1995. Although the facts here do support the trial court's finding Valerie had moved into her father's house, the record also supports a finding she had not severed her personal attachment with her grandparents' residence, and had even been at the grandparent's residence on the afternoon of the accident. We decline to look simply at the date of the accident, but rather the circumstances surrounding Valerie's residency. We conclude the record demonstrates Valerie Crosier was a resident of Audrine Crosier's household with some duration and some regularity, and the trial court should have found the record establishes dual residency in both Vernon Crosier's household and Audrine Crosier's household." Id at 5.
 {¶ 37} While appellants urge this Court to follow the "bright line" test for dual residency articulated by the Second District Court of Appeals in Plessinger v. Cox (December 31, 1997), Darke App. Nos. 1428 and 1429, we find that such test is not appropriate. In Plessinger, the court found the "some duration and some regularity" test did not serve the interest of divorced parents who purchased insurance policies to comply with their moral and legal responsibilities to their children, regardless of whether they are residential parents or simply enjoy visitation with the parent. Plessinger at 4. The "bright line" test makes the child a resident of both the residential parents' home, and the non-residential parents' home, if the non-residential parent has visitation rights. As we stated in Reardon, we believe that the "some duration and with some regularity" test is much more appropriate for situations like the one in the case sub judice.
 {¶ 38} Applying the "some duration and with some regularity" test to the facts in this matter, we find that the trial court did not err in determining that appellant Nicole Bell did not qualify as a "family member", and, therefore, was not an insured under the business automobile policy issued by appellee AMICO to Pallet Recycling. As is stated above, evidence was presented to the trial court that Nicole was living with her paternal grandmother at the time of the accident and had lived with her "pretty much since birth." In short, evidence was presented to the trial court that appellant Nicole Bell was not a resident of appellant James Bell's household with "some duration and some regularity". Deposition of James Bell at 10.[5]
 {¶ 39} Appellants' second assignment of error is, therefore, overruled.
 III {¶ 40} Appellants, in their third assignment of error, contend that the trial court erred in holding that "UM/UIM coverage operates under the AMM CGL only for employees acting within the scope of their employment." Appellants specifically maintained that appellants are insured for purposes of UM/UIM coverage by operation of law under such policy.
 {¶ 41} However, based upon our finding with respect to appellant's first assignment of error that the CGL is not a motor vehicle liability policy, appellants' third assignment of error is moot.
 IV {¶ 42} Appellants, in their fourth assignment of error, argue that the trial court erred in disallowing the consortium claim of appellant James Bell, appellant Nicole Bell's custodial parent. Appellants specifically contend that appellant James Bell is entitled to coverage under both the AMM CGL policy and the AMICO business automobile liability policy for his loss of consortium claim.
 {¶ 43} As is stated above in our discussion of appellant's first assignment of error, the CGL is not an automobile liability policy. Accordingly, appellant James Bell is not entitled to coverage under the AMM CGL policy for his loss of consortium claim.
 {¶ 44} The next issue for determination is whether appellant James Bell is an insured under the AMICO business automobile policy. According to appellee AMICO, if appellant James Bell is not an insured, he cannot maintain a consortium claim.
 {¶ 45} In the case sub judice, the AMICO business automobile policy defines an insured, in part, as including "you" and "If you are an individual, any `family member." While the named insured is Pallet Recycling, Inc., Endorsement 1L 7990, which was attached to appellees' consolidated motions for summary judgment, adds Daniel L. Bowling and Vicki L. Bowling as named insureds. Since individuals, in addition to the corporation, are named as insureds, appellee AMICO now contends that the ambiguity that was present in Scott-Pontzer v. Liberty Mut. Fire Ins.Co., 85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116 is not present.
 {¶ 46} However, in the recent case of Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903, this Court held that the rationale announced by the Ohio Supreme Court in Scott-Pontzer is applicable to policies which list both the corporation and also specific individuals as insureds. In Burkhart, we noted if the policies were only intended to afford coverage to the specific individuals named, then the inclusion of the corporation as a named insured is superfluous. Likewise, in the case sub judice, if the policy was intended to only insure the Bowlings, then the corporation, Pallet Recycling, Inc., would not have been listed as a named insured. See also Pahler v. MotoristsMut. Ins. Co., Stark App. No. 2002CA00022, 2002-Ohio-5762 and Still v.Indiana Ins. Co., Stark App. No. 2001CA00300, 2002-Ohio-1004. In short, we find that the addition of individuals as insureds does not remove the ambiguity created by the "you" in Scott-Pontzer. Since the ambiguity still exists, coverage is extended to Pallet Recycling's employees. Thus, appellant James Bell was an insured under the AMICO business automobile liability policy.
 {¶ 47} While the trial court, in its May 23, 2002, entry, held that appellant James Bell was not entitled to coverage under such policy because he himself had not sustained any bodily injury, we do not concur. In Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431, 433 N.E.2d 555, the Supreme Court held that an insurance policy's restrictions which attempted to limit coverage to insureds who suffer bodily injury are void because they result in less than the minimum amount of uninsured motorist coverage mandated by the legislature in R.C. 3937.18. In Sexton, Gareld Sexton, after his daughter was killed in an automobile accident caused by an uninsured motorist, sought to recover his damages arising out of his daughter's death under the UM portion of his insurance policy. Sexton's daughter was not an insured under the policy. In denying the claim, the insurer relied on a provision in the insurance policy requiring that an insured sustain bodily injury.
 {¶ 48} The Ohio Supreme Court, in Sexton, held that R.C. 3937.18
did not specify that an insured must sustain bodily injury in order to recover damages. The Court held that, for such reason, the insurance policy's restrictions allowing recovery only when an insured suffered bodily injury were "void because they attempt[ed] to limit recovery contrary to R.C. 3937.18." Id. at 437.
 {¶ 49} Thereafter, the Ohio Supreme Court in Moore v. State Auto.Mut. Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264, 723 N.E.2d 97, noted that subsequent to the decision in the Sexton case, the General Assembly amended R.C. 3937.18. The Supreme Court, in Moore, examined the present version of R.C. 3937.18, and found that the language of the statute is ambiguous regarding whether an insurer may limit uninsured motorist coverage to accidents in which an insured sustained bodily injury. The Supreme Court construed the language to determine legislative intent, and found that the amendments to R.C. 3937.18 do not supersede Sexton. The Supreme Court concluded that State Automobile could not deny decedent's mother's claim because she did not sustain bodily injury. To hold otherwise, the Moore court found that the parent of a wrongful death victim, who has a statutory right to compensation pursuant to R.C. 2125.02, would not be compensated for damages even though the parent had purchased uninsured motorist coverage.
 {¶ 50} The purpose of uninsured motorist coverage is to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go uncompensated, Moore at 31. To interpret R.C. 3937.18 to require that the insureds suffer bodily injury would therefore thwart the underlying purpose of uninsured motorist insurance. Id. See also Justice v. State Farm Ins. Co. (2000), 145 Ohio App.3d 359,763 N.E.2d 186.
 {¶ 51} Thus, pursuant to Moore, supra, the insurance coverage may not be limited in such a way that the insured must suffer bodily injury in order to be compensated for his or her damages. Since appellant James S. Bell was an insured under the AMICO policy, he was entitled to coverage for his loss of consortium claim.
 {¶ 52} Appellants' fourth assignment of error is sustained in part and overruled in part.
 Cross-Appeal {¶ 53} Appellees, in their first assignment of error on cross-appeal, argue that the AMM CGL is not a motor vehicle liability policy subject to R.C. 3937.18. Appellees, in their second assignment of error on cross-appeal, contend that the trial court erred in holding that the AMICO business automobile policy does not contain a named insured.
 {¶ 54} Appellees' first assignment of error on cross-appeal is sustained for the reasons set forth in our discussion of appellants' first assignment of error.
 {¶ 55} As is stated above, appellees, in their second assignment of error on cross-appeal, argue that the trial court erred in holding that the AMICO business auto policy contains no named insured. Appellees are correct that the subject policy lists both Pallet Recycling, a corporation, and the Bowlings, individuals, as insureds. However, as is discussed above, we find that, contrary to appellees' argument, the addition of named individuals does not remove the Scott-Pontzer
ambiguity.
 {¶ 56} Appellees' second assignment of error on cross-appeal is therefore, overruled.
 {¶ 57} Accordingly, for the foregoing reasons, the judgment of the Guernsey County Court of Common Pleas is affirmed in part and reversed in part.
By: Edwards, J., Gwin, P.J. and Hoffman, J. concur.
In Re: Scott-Pontzer Case.
[1] Since Heather Bell's individual claim was settled by the parties, no issue relating to her is the subject of this appeal. In addition, appellants settled with Patricia Currier, the tortfeasor, and State Farm.
[2] Elizabeth, who has been divorced from appellant James Bell since 1992, is not the natural mother of Heather or Nicole Bell.
[3] Appellees, in their brief, argue that since appellants did not file a Notice of Appeal from the trial court's April 19, 2002, entry, "any issues in appellants' merit brief addressing assignments of error from the trial court's April 19, 2002, order are not properly before this court"
As an initial matter, we note that the April 19, 2002, entry, which did not contain Civ.R. 54(B) language, was not a final appealable order. Thus, appellant was not required to file a Notice of Appeal from the same.
Moreover, App.R. 3(D) provides, in pertinent part, that "[t]he notice of appeal . . . shall designate the judgment, order or part thereof appealed from. . . ." We agree with the Eighth District Court of Appeals which has held that "App.R. 3 must be construed in light of the purpose of a notice of appeal, which is to notify appellees of the appeal and advise them of "just what appellants . . . [are] undertaking to appeal from." Parks v. Baltimore Ohio RR (1991), 77 Ohio App.3d 426, 428,602 N.E.2d 674, (citing Maritime Manufacturers, Inc. v. Hi-SkipperMarina (1982), 70 Ohio St.2d 257, 258-259, 436 N.E.2d 1034).
As appellees note, in the case sub judice, appellants' Notice of Appeal only designates the trial court's May 23, 2002, entry. However, appellants, in their Docketing Statement, listed the "Probable Issues for Review" as follows: "1. Whether Plaintiffs-Appellants Heather Bell, Nicole Bell, and James Elizabeth Bell are `insureds' under the AMM Commercial General Liability Policy No. 3MH787101-01 for Uninsured/Underinsured Motorist (UM/UIM) Coverage implied by operation of law. 2 Whether Plaintiffs-Appellants Heather Bell, Nicole Bell, and James Elizabeth Bell are `insureds' under the AMICO Business Auto policy for UM/UIM Coverage implied by operation of law." We find that, based upon the Docketing Statement, appellees were advised that appellants were also appealing from the earlier Judgment Entry. Furthermore, the trial court, in its May 23, 2002, Judgment Entry, specifically references the April 19, 2002, entry. Thus, as noted by appellants, the April 19, 2002 entry was "linked" to the final May 23, 2002, entry. See Maritime, supra.
For such reason, we will address all of the assignments of error raised by appellants since appellees should have been aware of what appellants were appealing.
[4] Appellants, in their reply brief, argue that this Court should disregard the cross assignments of error since appellees did not file a cross appeal. App.R. 3(C) states, in relevant part, as follows: "Cross appeal not required. A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal." Since appellees were defending the trial court's judgment on different grounds other than that relied upon by the trial court and appellants do not seek to change the trial court's judgment, appellees were not required to file a notice of cross appeal.
[5] Appellants, in their brief, also argue that summary judgment was inappropriate as a matter of law since the trial court "considered only the location where Nicole Bell slept and not the extent to which her father Bell is actually involved in her life." However, as memorialized in an entry filed on March 25, 2002, appellants were granted an additional fourteen days to respond to appellees' Consolidated Motions for Summary Judgment in order to conduct additional discovery. Thus, appellants had ample time to develop any other factors relevant to Nicole's residency.