JOURNAL ENTRY AND OPINION
Plaintiff-appellant Lamont Stafford (Stafford) appeals from the July 13, 2000 denial of his motion for summary judgment and the granting of summary judgment in favor of defendant-appellee-movant Nationwide Insurance Company (Nationwide) in this action seeking underinsured motorist coverage (UM). For the reasons adduced below, we reverse and remand.
A review of the record on appeal indicates that on April 4, 1997, Stafford was a passenger in a 1990 Buick automobile operated by defendant Virginia Gullion (who was Stafford's girlfriend at the time). This Buick was titled in the name of Gullion's estranged husband, defendant Ronald Coleman. The Buick vehicle was involved in a collision with another vehicle at the intersection of Memphis Avenue and West 63rd Street in Cleveland, Ohio. The tortfeasor's vehicle was operated by defendant Barbara Soha, and caused Stafford to suffer serious physical injuries. On the date of the accident, defendant Ronald Coleman was living at his mother's (Mercedes Coleman) home located at 3520 West 47th Street, Cleveland, Ohio. Similarly, on the date of the accident, Stafford was living with Gullion (who was separated at the time from Ronald Coleman) in the leased marital home of Gullion/Coleman located at 4332 West 47th Street, Cleveland, in a rent-sharing arrangement with Stafford. Ronald Coleman had separated from Gullion and left the marital home approximately two months before the accident and moved to his mother's home.
On the date of the accident herein, Mercedes Coleman, the mother of the titled owner of the Buick and the mother-in-law of Gullion, was the policyholder of a Nationwide Century II automobile liability insurance policy (policy number 92 34 H 440901) first issued to her in 1992, and most recently renewed on December 13, 1996 (with a policy period of January 7, 1997 to July 7, 1997). The policy's Declarations identified the insured vehicles as a (1) 1993 Ford Escort and (2) 1985 Toyota Van, and provided UM bodily injury coverage in the amount of $100,000 per person, $300,000 per occurrence. This policy, in the Definitions section at page 2 of the policy, defined the following terms:
 1. POLICYHOLDER means the first person named in the Declarations. The policyholder is the named insured under this policy and does not include the policyholder's spouse. If the first named insured is an organization, that organization is the policyholder.
 2. YOU and YOUR means the policyholder and spouse if living in the same household.
 3. RELATIVE means one who regularly lives in your household, related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household.
 4. INSURED means one who is described as entitled to protection under each coverage.
* * *
 6. YOUR AUTO means the vehicle(s) described in the Declarations. (Emphasis in the original.)
The policy, in Endorsement 2352 — Uninsured Motorists Coverage, which defines uninsured motor vehicle as a vehicle which has no liability insurance or bond in effect or is underinsured, states the following with respect to uninsured motor vehicles, the policyholder, and relatives of the policyholder:
 YOU AND A RELATIVE We will pay compensatory damages, including derivative claims, which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative. Damages must result from an accident arising out of the:
1. ownership;
2. maintenance; or
3. use; of the uninsured motor vehicle.
 OTHER PERSONS
We will also pay compensatory damages, including derivative claims, which are due by law to other persons who:
 1. Are not a named insured or an uninsured household member for similar coverage under another policy; and
2. Suffer bodily injury while occupying:
a) your auto.
 b) a motor vehicle you do not own, while it is used in place of your auto for a short time. Your auto must be out of use because of:
(1) breakdown;
(2) repair;
(3) servicing; or
(4) loss.
 c) a four-wheel motor vehicle newly acquired by you. This applies only during the first 30 days you own the vehicle, unless it replaces your auto.
 d) any other motor vehicle while it is being driven by you or a relative. This extension applies only in policies issued to persons (not organizations). However, the vehicle must not be:
(1) owned by you or a relative; or
 (2) furnished to you or a relative for regular use. (Emphasis in the original.)
Endorsement 2352, Coverage Exclusions, at page 2 thereof, specifically excluded UM coverage in the following pertinent situations:
 2. Use of any motor vehicle by an insured without the owner's permission.
* * *
 4. Bodily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Auto Liability coverage under this policy. It also does not apply to bodily injury from being hit by any such motor vehicle. (Emphasis in the original.)
Subsequent to defendant Soha's insurer tendering to Stafford the policy limits of Soha's insurance coverage, Stafford then sought UM coverage under Mercedes Coleman's Nationwide policy because he was a passenger of a vehicle being operated by a relative of Mercedes Coleman and as such is entitled to UM benefits through the Nationwide policy in issue. See appellant's brief at 8. In effect, Stafford seeks UM coverage through his girlfriend's estranged husband's mother's policy.
The action was filed on March 10, 1999, alleging separate claims for relief against Soha, Gullion, Ronald Coleman, Nationwide, and John Doe insurance companies. Thereafter, Nationwide and Stafford filed cross-motions for summary judgment.[1] Attached to Nationwide's January 18, 2000, motion were copies of the depositions of Ronald Coleman and Mercedes Coleman, and a copy of the insurance policy at issue. Attached to Stafford's January 24, 2000 motion was a copy of the insurance policy, a copy of a letter from Ms. Soha's counsel indicating that her policy limits had been tendered to Stafford, and copies of case law, procedural rules and statutes relied upon by the movant. Thereafter, Stafford filed a reply brief on February 16, 2000. Nationwide filed its reply brief on February 28, 2000. No evidence was attached to either of these reply briefs.
On July 13, 2000, the trial court ruled on the competing motions for summary judgment at issue, concluding that Gullion, who was related by marriage to Ronald and Mercedes Coleman, was not a resident relative for purposes of insurance coverage because she was estranged from, and living apart from, Ronald Coleman, and her prior living arrangements with Mercedes Coleman were irregular and transient in nature. See Journal Vol. 2484, pages 68-70.
Appellant-Stafford presents two interrelated assignments of error. These assignments, which will be discussed jointly, provide:
 I THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE NATIONWIDE INSURANCE COMPANY.
 II THE TRIAL COURT ERRED IN DENYING THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF-APPELLANT LAMONT STAFFORD.
The standard of review for a summary judgment ruling was recently stated in Post v. Harber (Feb. 16, 2001), Vinton App. No. 00CA541, unreported, 2001 Ohio App. LEXIS 664 at 7-11:
 When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review.
 See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241, 245.
 Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
 Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47.
 Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
 Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
See, also, Barilla v. Patella (June 7, 2001), Cuyahoga App. No. 78128, unreported, at 6-7, citing Bisbee v. Cuyahoga Cty. Bd. Of Elections (Mar. 1, 2001), Cuyahoga App. No. 77629, unreported.
The Postcourt, 2001 Ohio App. LEXIS at 11-13, also addressed the standard to be applied in construing the provisions of an insurance policy:
 The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g., Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 686; Alexander v. Buckeye Pipeline Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. When interpreting an automobile liability insurance policy, courts must employ the statutory law in effect at the time of contracting or renewal. Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281, 287-88, 695 N.E.2d 732, 737.
 In interpreting an automobile liability insurance policy, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. Cincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604, 607, 710 N.E.2d 677, 679. Provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. Ross, 82 Ohio St. 3 d at 287, 695 N.E.2d at 736.
 A clear, unambiguous underinsured motorist coverage provision is valid and enforceable as long as the provision is not "contrary to the coverage mandated by R.C. 3937.18(A)." Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 28-29, 723 N.E.2d 97, 99; see, also, Schaefer v. Allstate Ins. Co. (1996), 76 Ohio St.3d 553, 555, 668 N.E.2d 913, 915 (stating that a court should not deem an insurance policy provision unenforceable unless the provision is contrary to the statute and contrary to the statute's purpose).
 When construing an underinsured motorist coverage provision in an automobile liability insurance policy, a court should remain "mindful of the basic tenet that the purpose of [underinsured] motorist coverage and its mandatory offering is `to protect persons from losses which, because of the tortfeasor's lack of [adequate] liability coverage, would otherwise go uncompensated.'" Id., 76 Ohio St. 3 d at 555, 668 N.E.2d at 915 (quoting Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, 480, 639 N.E.2d 438, 440); see, also, Moore v. State Auto. Mut. Ins. Co. (2000), 88 Ohio St.3d 27, 31, 723 N.E.2d 97, 102.
In order for Stafford to be eligible to recover under Mrs. Coleman's UM coverage as an insured for having suffered injuries while occupying an other motor vehicle driven by a relative (Gullion) of the policyholder, it must be shown that Gullion, at the time of the accident, was a relative under the terms of the policy.[2] The policy, as previously detailed, requires two predicate conditions for someone to be considered a relative. See Definitions at item 3. First, the putative relative must be related to the policyholder by blood, marriage or adoption. Gullion satisfies this first condition because, at the time of the accident and despite her estrangement from her husband at that time, she was related by marriage to the policyholder; Gullion was Mrs. Coleman's daughter-in-law. The second condition is that, allowing for temporary living outside the policyholder's household, the putative relative regularly lives in the policyholder's household. This second condition is more problematic.
The deposition testimony of Ronald Coleman indicates that Gullion and Ronald Coleman were married sometime in 1992 and had a much-traveled history together. See Ronald Coleman deposition, at 11. The two separated at least two months prior to the accident. Id.at 12. Prior to the marriage, they lived at his parents' home, but moved into a place of their own on West 61st Street after the marriage, staying there for less than a year. Id. at 13. The pair then moved into a leased home on West 47th Street. After approximately two years, the pair experienced some problems and moved in with his parents for a couple of months. Id. at 14-15. The couple then moved into an apartment of their own. Problems again beset the couple and they returned to live at his mother's home. Id.at 15. The pair then moved a few months later to a room at a hotel in Parma, Ohio, for a couple of months. Id. at 15-16. Problems returned and the couple returned to his mother's home. Id. at 16. The pair then moved to a place on 88th and Denison. And it didn't work out again. Then I took off * * * and he moved back to his mother's home. Id. Gullion and Stafford took over paying on the lease of the marital home where they lived prior to the accident. Id. at 18.
Mercedes Coleman's deposition testimony also indicated a transient character concerning the living arrangements of Gullion and Ronald Coleman. Mrs. Coleman acknowledged that Gullion and her son lived at her house for approximately two years after they married and that after her son moved back with her two months prior to the accident, she last spoke with Gullion in September or October of 1999 when she happened to see Gullion at a local gasoline station. See Mercedes Coleman deposition, at 19, 33-34. She also indicated that she could not remember when Gullion and her son last lived together. Id. at 28. Mrs. Coleman testified that Gullion was living with a boyfriend who was not her son at the time of the accident, and that her son, at the time of the accident, was living with his mother. Id. at 37.
Despite this irregular, intermittent pattern of moving in and out of the policyholder's home by Gullion, and the fact that Gullion was not living in the policyholder's home at the time of the accident, we are forced to apply the version of R.C. 3937.18(A)(1)as it existed at the time of the 1996 renewal of the policy in question.[3] See Wolfe v. Wolfe,(Mar. 29, 2000), 88 Ohio. 3d 246, paragraph two of the syllabus (The commencement of each policy mandated by R.C. 3937.31[A] brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy.); Ross v. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281
(the law in force at the time an insurance contract is made defines the rights and duties of the parties to the contract). Also, we must give effect to the pronouncement that insurance policies with uninsured/underinsured motorist provisions excluding relatives who do not live with the policyholder violates R.C. 3937.18(A)(1). See Moore v. State Auto Ins. Co. (Feb. 16, 2000), 88 Ohio St.3d 27, 31-33. Accordingly, Gullion was an insured person under the terms of the policy for purposes of R.C. 3937.18(A)(1).
In addition to arguing that UM coverage is precluded because Gullion was not a relative who regularly lived in the policyholder's household, Nationwide argues that the vehicle driven by Gullion was not an insured vehicle under the terms of the policy because: (1) the vehicle was not specifically listed in the Declarations page of the policy as a covered vehicle and is therefore precluded UM coverage by virtue of Endorsement 2352, Coverage Exclusions, paragraph 4; and, (2) the vehicle was owned by Ronald Coleman, a relative of the policyholder, and is therefore precluded UM coverage by virtue of Endorsement 2352, Other Persons, paragraph 2(d)(1), which excludes coverage of other motor vehicles which are driven by a relative and which are owned by * * * a relative. Applying the 1996 version of R.C. 3937.18, both of these supplemental arguments lack merit since the purported exclusions are unenforceable as a matter of law.[4]
In Martin v. Midwestern Group Ins. Co. (1994), 70 Ohio St.3d 478, paragraph three of the syllabus, the Supreme Court held that the other owned vehicle exclusion, which eliminates UM coverage for persons who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is invalid. Under the terms of the policy herein, Gullion and Ronald Coleman are relatives of the policyholder and are thereby considered insured. Ronald Coleman, an insured, owns the vehicle which Gullion was driving, and in which Stafford was riding, at the time of the accident. Stafford, as an other person who suffered bodily injury in an other motor vehicle driven by a relative of the policyholder, but which vehicle was not specifically listed in the Declarations, qualifies for coverage under Martin.
In Nationwide Mut. Ins. Co. v. Jones (1994), 70 Ohio St.3d 491, the Supreme Court, based on Martin, invalidated a UM policy exclusion precluding coverage for vehicles owned by a relative of the policyholder.
In summary, UM coverage, as a matter of law, is available to Stafford through the policy in issue up to the policy limits of $100,000 and the trial court erred in granting summary judgment to Nationwide and denying summary judgment to Stafford. Instead, summary judgment is entered in favor of Stafford on whether UM coverage is available to him and the Nationwide motion for summary judgment is without merit. The assignments are affirmed and the matter remanded for a determination of the amount of damages due Stafford under the terms of the UM coverage provided by Nationwide in the policy issued to Mrs. Coleman.
Reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., CONCURS; COLLEEN CONWAY COONEY, J., DISSENTS WITH DISSENTING OPINION ATTACHED.
[1] Stafford's motion did not seek a judgment for $100,000 (representing the full amount of available UM coverage). However, in his reply brief, Stafford sought an order entitling him to UM benefits under the Nationwide policy issued to Mercedes Coleman up to the $100,000 limit provided therein. See Stafford reply brief at 6.
[2] It is with interest to note that at oral argument both attorneys stipulated that Gullion was a relative under the terms of the policy.
[3] The version of R.C. 3937.18(A)(1) in effect at the time oft the accident herein, which is identical to the current version, provides the following:
(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 (1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury or death under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy.
 For purposes of division (A)(1) of this section, a person is legally entitled to recover damages if he is able to prove the elements of his claim that are necessary to recover damages from the owner or operator of the uninsured motor vehicle. The fact that the owner or operator of the uninsured motor vehicle has an immunity, whether based upon a statute or the common law, that could be raised as a defense in an action brought against him by the person insured under uninsured motorist coverage does not affect the insured person's right to recover under his uninsured motorist coverage.
[4] These exclusions would be enforced if the current version of R.C. 3937.18(J)(1), effective September 21, 2000, were applicable.