OPINION
{¶ 1} This is an appeal from a summary judgment in favor of an insurer on its complaint for declaratory relief.
 {¶ 2} Cincinnati Equitable Insurance Company ("CEIC") issued a policy of automobile liability insurance to Patricia Wells on June 6, 1991. The policy was renewed every six months thereafter, in October and June. Uninsured/underinsured motorist ("UM/UIM") coverage was added to the policy on October 19, 1996. Another vehicle was added to the policy's coverage on May 12. 1998.
 {¶ 3} On June 27, 2001, Wells' father was killed in an automobile collision allegedly caused by negligence of an uninsured motorist. It is undisputed that Wells' father was not an insured under the policy CEIC issued to Wells. Neither is it disputed that, at least for these purposes, Wells has a claim for relief for damages for her father's alleged wrongful death.
 {¶ 4} Wells sought coverage under her policy's UM/UIM provisions for the losses she suffered arising from her father's death. CEIC denied coverage, contending that the express terms of its policy restrict the UM/UIM coverage provided to claims for bodily injury or death suffered by insureds themselves.
 {¶ 5} CEIC commenced the underlying action to determine its duty of coverage. The issue presented was whether the version of R.C. 3937.18(A) in effect when the accident occurred permits CEIC to restrict UM/UIM coverage to bodily injury suffered by a person who is insured under the policy.
 {¶ 6} Both parties moved for summary judgment. The trial court denied Wells' motion and granted summary judgment to CEIC, finding that it has no duty to provide UM/UIM coverage to Wells arising from her father's death. Wells appeals.
 ASSIGNMENT OF ERROR {¶ 7} "The trial court abused its discretion and erred as a matter of law in granting the plaintiff-appellee, Cincinnati Equitable Insurance Company's motion for summary judgment and in failing to grant the defendant-appellant, Patricia Wells's (sic) motion for summary judgment."
 {¶ 8} R.C. 3937.18(A), as it was originally enacted in 1965 and until amended effective October 21, 2001, required every insurer who issued or delivered a policy of automobile liability insurance in Ohio to offer UM/UIM coverage to the insured in an equivalent amount. If the insurer failed to do that, or to secure a proper rejection, that coverage is impressed on the policy by operation of law. Barris v. Grange Mutual Cos. (1989),46 Ohio St.3d 84.
 {¶ 9} The amendment of R.C. 3937.18(A) that abandoned the requirement of an offer of UM/UIM coverage was the last in a series of thirteen amendments adopted since the statute was enacted. Its kaleidoscopic history, coupled with the coverage requirement, caused the Supreme Court to hold that when an issue of coverage arises vis-a-vis the statute, the issue is determined by the version of R.C. 3937.18 in effect when the insurance contract was formed. Ross v. Farmer's Ins. Group of Companies,82 Ohio St.3d 281, 1998-Ohio-301. Further, "commencement of each (two year) policy period mandated by R.C. 3937.18(A) brings into existence a new contract of automobile insurance, whether the policy is characterized as a new policy of insurance or a renewal of an existing policy." Wolfe v. Wolfe, 88 Ohio St.3d 246,265-266, 2000-Ohio-322.
 {¶ 10} Wells' father died on June 27, 2001, and her wrongful death claim accrued on that date. Per Wolfe, the version of R.C. 3937.19(A) in effect when the two-year statutory term then applicable to the policy commenced determines the coverage question presented.
 {¶ 11} CEIC argues that the applicable term commenced on June 6, 2001, the policy's regular renewal date. Wells argues that the applicable two year term instead commenced on May 12, 2000, the anniversary of the date in 1998 when she added another auto to her policy, which operated to form a new contract.
 {¶ 12} These are, however, distinctions without a difference, at least for these purposes. Am.Sub.H.B. No. 267 amended R.C.3937.18, effective as of September 3, 1997. That version of the statute was in effect on May 12, 2000, when according to Wells the policy was last renewed prior to her father's death on June 27, 2001. It was likewise in effect on June 6, 2001, the policy renewal date urged by CEIC. R.C. 3937.18(A) was not amended in any way relevant to the issues presented until Am.Sub.S.B. No. 57 was enacted to become effective September 21, 2000, prior to the accident in which Wells' father was killed but after both policy "renewal" dates had passed. The amendment enacted by Am.Sub.H.B. N0 267, effective September 3, 1997, is therefore controlling of the coverage issue presented.
 {¶ 13} The significance of the 1997 version of the statute to the issue before us is that it requires an offer of UM/UIM coverage in any automobile liability policy covering "bodily injury or death suffered by any person" to be made to a policy's insureds "for loss due to bodily injury or death suffered by such insureds." Id. The CEIC policy at issue employs the words "such insureds." The prior version, which became effective in 1994, ended instead with the words "such persons." The Supreme Court, finding an ambiguity in use of the words "such persons," held that the coverage required applies to bodily injury to any person which results in a legally compensable loss to an insured. Moorev. State Auto Mut. Ins. Co., 88 Ohio St.3d 27, 2000-Ohio-264.
 {¶ 14} Application of the Moore interpretation to these facts would require UM/UIM coverage for Wells on her claim for wrongful death: Wells, the insured, suffered a loss due to her father's bodily injury and death. She argues that the Moore
analysis should apply, adoption of the new term "such insureds" notwithstanding, because the change from "such persons" is immaterial to the ambiguity which the court in Moore found.
 {¶ 15} Wells also argues that because uncodified legislation attached to the version of R.C. 3937.18(A) which became effective in September of 2001 expressly superceded Moore and Sexton v.State Farm Mut. Ins. Co. (1982), 69 Ohio St.2d 431, on whichMoore was based, and the 1997 version adopting the words "such persons" did not, then it should not be inferred that the General Assembly intended to narrow the scope of R.C 3937.18(A) when it adopted the 1997 version.
 {¶ 16} As interpreted by Moore, the words "such persons," as used in the 1994 version of R.C. 3937.18(A), modified and referred to individuals who suffer bodily injury or death, not to the insured to whom the policy's liability coverage is provided and to whom the offer of UM/UIM coverage must be made. By adopting instead the words "such insureds," the 1997 version confines the required UM/UIM coverage that must be offered to coverage for claims for bodily injury and death suffered by the person(s) to whom "such insrueds" specifically refers, the named insureds. We find no significance in the fact that, unlike the version of R.C. 3937.18(A) that became effective in September of 2001, the 1997 version had no uncodified legislative statement rejecting Moore and its rationale. It could not have, becauseMoore was not decided until the year 2000.
 {¶ 17} We agree with the trial court that the 1997 version of R.C. 3937.18(A) governs the scope of the UM/UIM coverage provisions of the CEIC policy. It permits that coverage to be restricted to losses arising from bodily injuries and death which are suffered by a policy's insureds, as the CEIC policy expressly does. Accord, Giant Eagle Inc. v. Genesis Ins. Co. (2003),242 F. Supp.2d 559. Therefore, inasmuch as Wells' father is not a named insured under the CEIC policy, Wells is not entitled to the benefit of the UM/UIM coverage her policy provides for losses she suffered arising from his death.
 {¶ 18} Wells further argues that, in that event, CEIC breached its fiduciary duty to her when it failed to explain the differences resulting from the adoption of the 1997 version of R.C. 3937.18(A). Wells contends that CEIC acted contrary to public policy when it employed the words "such insureds" in the UM/UIM coverage it offered, because their effect is inconsistent with the holding in Moore.
 {¶ 19} Moore involved the 1994 version of R.C. 3937.18, not the 1997 version. The 1997 version employed the words "such insureds," which appear in the CEIC policy. Further, and inasmuch as Moore was not decided until the year 2000, it could not provide any guidance in writing a policy issued before the case was decided. Finally, insurance companies have no duty, ordinary or fiduciary, to keep their insureds aware of changes in the law.Martin v. Grange Mut. Ins. Co. (2001), 143 Ohio App.3d 332.
 {¶ 20} The assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. and Young, J., concur.