OPINION
{¶ 1} On September 24, 1998, Richard Bernabei was killed when his motorcycle was struck by an automobile driven by Michelle Kellogg, who was an underinsured motorist ("UIM"). Richard Bernabei was survived by his parents, Appellees Robert and Shirley Bernabei, and by his wife Appellee Tamara Bernabei. Appellees Robert and Shirley Bernabei owned a personal automobile insurance policy (the "Personal Auto policy") No. HRA 696 49 73, issued by Appellant Cincinnati Insurance Companies ("Appellant"). Richard Bernabei was also a member of a union, IBEW Local 540, which owned insurance policy No. CAP 500 9118 C1 (the "IBEW policy"), also issued by Appellant. On February 6, 2002, the Stark County Court of Common Pleas filed two judgment entries which held that there was valid UIM coverage under both insurance policies. The judgment entries were appealed to the Fifth District Court of Appeals in two separate appeals. Three judges from the Seventh District Court of Appeals are sitting by assignment to hear these two appeals.
 {¶ 2} Appeal No. 2002CA00073 challenges the trial court's decision to grant coverage to Richard Bernabei under his union's automobile policy. As we will explain below, the trial court's judgment as regards to the IBEW policy must be reversed based on the recent holding of Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. Appeal No. 2002CA00078 asks this Court to determine whether the holding ofSexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555, should be applied to a 1997 version of R.C. § 3937.18(A). The trial court correctly appliedSexton and properly granted UIM coverage to Appellees pursuant to their Personal Auto policy. Thus, we reverse the trial court decision in Appeal No. 2002CA00073, and affirm the decision of the trial court in Appeal No. 2002CA00078.
 FACTS AND PROCEDURAL HISTORY {¶ 3} On September 25, 2000, Appellee Tamara Bernabei filed a declaratory judgment and breach of contract complaint against four insurance companies, including Appellant. Her claim against Appellant sought to have the trial court declare that UIM coverage existed under the IBEW policy.
 {¶ 4} On January 16, 2001, five other members of the Bernabei family filed a declaratory judgment action against Appellant and three additional insurance companies. Their claim against Appellant involved UIM coverage allegedly arising out of the Personal Auto policy issued to Robert and Shirley Bernabei. The two cases were later consolidated by the trial court.
 {¶ 5} On May 31, 2001, parent Appellees filed a motion for summary judgment regarding the Personal Auto policy. The next day, Appellee Tamara Bernabei filed a motion for summary judgment regarding the IBEW policy. On June 29, 2001, Appellant filed a cross-motion for summary judgment regarding the Personal Auto policy. Three days later, Appellant filed a cross-motion for summary judgment as regards the IBEW policy. The trial court ruled on all of these motions on February 6, 2002.
 {¶ 6} The trial court granted summary judgment to Appellee Tamara Bernabei, holding that the decedent was an insured under the IBEW policy pursuant to the principles set forth inScott-Pontzer v. Liberty Mut. Fire Ins., Co. (1999),85 Ohio St.3d 660, 710 N.E.2d 1116. The trial court based this decision on its finding that the decedent's status as a member of the union gave him the same rights under Scott-Pontzer as an employee of a corporation attempting to claim UIM benefits under a corporate automobile liability policy. The remaining issue of damages was submitted to arbitration pursuant to the terms of the IBEW policy. Appellant filed a timely notice of appeal on March 7, 2002.
 {¶ 7} The trial court also granted, by separate entry, summary judgment to parent Appellees on their UIM claim arising under the Personal Auto policy. The trial court held that the 1997 version of R.C. § 3937.18(A) did not preclude Appellee parents from recovering funeral and other expenses arising out of the death of their son, under the principles set forth inSexton supra, and Moore v. State Auto Mut. Ins. Co. (2000),88 Ohio St.3d 27, 723 N.E.2d 97. The judgment entry did not contain the, "no just reason for delay language," set forth in Civ.R. 54(B), which would have allowed the parties to file an immediate appeal. Appellant, nevertheless, filed a notice of appeal on March 8, 2002.
 {¶ 8} On April 24, 2002, parent Appellees filed a motion to dismiss the Personal Auto policy appeal for lack of a final appealable order. On May 7, 2002, Appellees refiled the same motion to dismiss. On May 16, 2002, Appellant filed a response. On May 30, 2002, Appellant filed a similar response in the IBEW policy appeal although no motion to dismiss that appeal had been filed.
 {¶ 9} This Court subsequently issued a journal entry allowing the parties to petition the trial court for amended judgment entries containing the language required by Civ.R. 54(B).
 {¶ 10} On January 3, 2003, the trial court issued an amended judgment entry affecting the Personal Auto policy judgment. The trial court found, nunc pro tunc, that there was no just cause for delay pursuant to Civ.R. 54(B).
 FINAL APPEALABLE ORDER STATUS {¶ 11} There are two judgment entries now on appeal. Appellees have challenged whether the appeal surrounding the Personal Auto policy presents a final appealable order. Although the trial court initially failed to include the language required by Civ.R. 54(B) to allow this judgment to be final and appealable, the trial court amended the judgment, nunc pro tunc, on January 3, 2003, stating that "[t]here is no just cause for delay."
 {¶ 12} A court of appeals only has jurisdiction to review final appealable orders. Chef Italiano Corp. v. Kent StateUniv. (1989), 44 Ohio St.3d 86, 87, 541 N.E.2d 64. An order that leaves one or more parties or claims pending before the trial court may be final and appealable if it satisfies the requirements of R.C. § 2505.02(B) and Civ.R. 54(B). Wisintainerv. Elcen Power Strut Co. (1993), 67 Ohio St.3d 352, 354,617 N.E.2d 1136.
 {¶ 13} R.C. § 2505.02(B) sets forth five types of final appealable orders: {¶ 14} "(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 {¶ 15} "(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
 {¶ 16} "(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;
 {¶ 17} "(3) An order that vacates or sets aside a judgment or grants a new trial; {¶ 18} "(4) An order that grants or denies a provisional remedy and to which both of the following apply:
 {¶ 19} "(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
 {¶ 20} "(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.
 {¶ 21} "(5) An order that determines that an action may or may not be maintained as a class action."
 {¶ 22} The February 6, 2002, judgment entry only partially resolved parent Appellees' declaratory judgment claim involving the Personal Auto policy. This Court has previously held that a declaratory judgment action is a special proceeding, and has held that a judgment entry in a declaratory judgment action that affects the substantial rights of the parties may be immediately appealed under R.C. § 2505.02(B)(2). Shirley v. RepublicFranklin Ins. Co., 5th Dist. No. 2002CA00261, 2003-Ohio 4116. Furthermore, Civ.R. 54(B) allows a trial judge to make a finding of, "no just cause for delay," if the judge wishes an interlocutory judgment entry to be immediately appealable. The trial judge in this case has included this language as part of the judgment entry dealing with the Personal Auto policy. Therefore, this judgment constitutes a final appealable order.
 {¶ 23} Appellees have not challenged the appealability of the entry declaring Appellant liable for UIM coverage under the IBEW policy and submitting the claim to arbitration. Under R.C. §2711.02(C), a decision of a trial court to stay proceedings and submit an action to arbitration is a final appealable order.
 SUMMARY JUDGMENT STANDARD {¶ 24} These two appeals involve the trial court's determination of four motions for summary judgment. Appellate review of summary judgment is de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In accordance with Civ.R. 56, summary judgment is appropriate:
 {¶ 25} "[W]hen (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
 APPEAL NO. 2002CA00073 {¶ 26} Appellant's first assignment of error asserts:
 {¶ 27} "The trial court erred as a matter of law in granting summary judgment in favor of appellee and in failing to grant Cincinnati's motion for summary judgment, where Richard Bernabei was not a `named insured' under the terms of the Cincinnati policy."
 {¶ 28} The trial court's decision to allow Appellee wife to receive UIM coverage under the IBEW policy is predicated on the analysis of Scott-Pontzer, supra, which has recently been overturned by Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256. Scott-Pontzer held that an ambiguity arises when a corporate automobile insurance policy defines the term "insured" by the word "you." Employees of the corporation receive UIM coverage under the policy because of that ambiguity. Scott-Pontzer, 85 Ohio St.3d at 664,710 N.E.2d 1116. Giving Appellee Tamara Bernabei the benefit of the record, we will assume arguendo that the IBEW policy contains the same terms and ambiguities as the policies under review inScott-Pontzer. The recent Galatis opinion severely restricted the application of Scott-Pontzer so that it only applies to situations in which the employee was acting in the course and scope of employment at the time of the accident. Galatis at paragraph two of the syllabus. The parties in the instant appeal agree that decedent, Richard Bernabei, was not acting in the course and scope of employment at the time of the accident. Therefore, neither Richard nor the personal representative of his estate can claim UIM benefits under the IBEW policy.
 {¶ 29} The trial court also found that Tamara Bernabei and other family members of Richard Bernabei were covered by the IBEW policy. Galatis held that an employee's family members are not covered under a business UIM policy unless the employee is specifically named as an insured within the policy. Galatis at paragraph three of the syllabus. Richard is not a named insured on the IBEW policy. Therefore, no members of his family can claim UIM coverage under the policy. The trial court should not have submitted this claim to arbitration because no appellees are covered by the IBEW policy. Appellant's first assignment of error is hereby sustained and the judgment of the trial court is reversed in Appeal No. 2002CA00073.
 {¶ 30} Appellant's second assignment of error is moot, as it deals with the terms of arbitration. The issue of damages should never have been considered for arbitration because Appellant is not obligated to pay UIM benefits.
 APPEAL NO. 2002CA00078 {¶ 31} This appeal presents a single assignment of error:
 {¶ 32} "The trial court erred in holding that the house bill 261 amendments to R.C. § 3937.18 did not permit an uninsured motorist insurance carrier to limit uninsured/underinsured motorist coverage to accidents wherein the insured sustains bodily injury."
 {¶ 33} Appellant argues that the Personal Auto policy at issue expressly limited UIM benefits to situations in which an insured received bodily injuries. The parties agree that the decedent was not an insured under the policy. Appellant acknowledges that a 1988 version of R.C. § 3937.18(A) prohibited auto insurance policies from limiting UIM coverage in this manner as a result of the Sexton opinion. Appellant also acknowledges that a 1994 version of R.C. § 3937.18(A) again prohibited this same type of limitation, based on the Ohio Supreme Court's holding in the Moore case, supra. However, this matter involves yet another revision of R.C. § 3937.18(A) in 1997. Appellant believes that this version of the statute allowed insurers to insert a restriction into UIM policies so that UIM benefits would only be paid if an insured suffered bodily injuries or death. In the instant case there was no insured who received bodily injuries or death, and therefore, Appellant concludes that it is not responsible for paying UIM benefits.
 {¶ 34} Any discussion of the issues involved in this assignment of error must begin with the Sexton case. Sexton
reviewed uninsured motorist ("UM") coverage issues arising out of an auto accident in which 17-year-old Laurie Sexton was killed by an uninsured motorist. The father, Gareld Sexton, owned an automobile policy containing UM coverage. Laurie was not living at home at the time, and was not an insured under Mr. Sexton's policy. Mr. Sexton attempted to claim UM benefits for certain expenses, including funeral expenses, surrounding his daughter's death. Mr. Sexton was legally obligated to pay these expenses by virtue of a child support order.
 {¶ 35} Sexton held that the UM carrier was required to cover the funeral expenses its insured, Mr. Sexton, was legally obligated to pay for Laurie's death, even though Laurie was not herself an insured under the policy. Sexton,69 Ohio St.2d at 435, 433 N.E.2d 555.
 {¶ 36} Sexton was interpreting the following language in the policy:
 {¶ 37} "To pay all sums which the insured * * * shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured motor vehicle * * *." Id. at 432, 23 O.O.3d 385, 433 N.E.2d 555.
 {¶ 38} The policy at issue in Sexton attempted to limit recovery to damages arising from bodily injury to the insured, i.e., bodily injury to Mr. Sexton. The Supreme Court held, though, that this restriction violated the public policy of R.C. § 3937.18(A). Id. at 435-436, 23 O.O.3d 385, 433 N.E.2d 555. The 1988 version of the statute under review in Sexton contained the following provisions:
 {¶ 39} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, for the protection of personsinsured thereunder who are legally entitled to recover damagesfrom owners or operators of uninsured motor vehicles because ofbodily injury, sickness, or disease, including death, resulting therefrom." (Emphasis added.) Id. at 433-434, 23 O.O.3d 385,433 N.E.2d 555.
 {¶ 40} The critical question for the Sexton court was whether the insured, i.e., Mr. Sexton, was legally entitled to recover damages sustained because of injury or death caused by an uninsured motorist. The secondary question was whether the damages related to bodily injury or death.
 {¶ 41} The court held that the statute did not specifically require that the bodily injury be sustained by an insured. Id. The statute only required that the insured be legally entitled to recover damages because of bodily injury, without limitation as to the particulars of that bodily injury. Laurie obviously suffered bodily injury and death. Mr. Sexton was legally entitled, under a wrongful death claim, to recover his daughter's funeral expenses from the tortfeasor. The court held that this expense was covered by the terms of the policy, regardless of the fact that Laurie was not an insured under the policy. Id. at 435, 23 O.O.3d 385, 433 N.E.2d 555.
 {¶ 42} The four elements of a Sexton claim are: "1) the claimant must be an insured, 2) the claimant is legally entitled to recover damages, 3) the damages result from injury, sickness, disease or death and 4) the tortfeasor must be the owner and/or operator of an uninsured motor vehicle." Wilson v. NationwideIns. Co. (Nov. 20, 1997), 8th Dist. No. 71734, at *6.
 {¶ 43} Sexton was reaffirmed in the Moore case, which interpreted the following version of R.C. § 3937.18 contained in Am.Sub.S.B. No. 20, effective October 20, 1994:
 {¶ 44} "(A) No automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery in this state * * * unless both of the following coverages are provided to persons insured under the policy for loss due to bodily injury or death suffered by such persons:
 {¶ 45} "(1) Uninsured motorist coverage, which * * * shall provide protection for bodily injury or death * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy." (Emphasis added.) Moore, 88 Ohio St.3d at 30,723 N.E.2d 97.
 {¶ 46} Moore held that the 1994 version of the statute continued to protect insureds against losses and damages arising from bodily injury or death caused by the act of an uninsured motorist, whether or not the person who suffered the bodily injury or death was specifically an insured. Id. at 32,723 N.E.2d 97. Moore held that R.C. § 3937.18(A) did not permit an insurance policy to limit UM coverage only to situations in which an insured suffered bodily injury or death. Id. at 32-33. Moore
held that R.C. § 3937.18(A) would have permitted this limitation if the words "for loss" and "damages" were removed from the statute:
 {¶ 47} "if the words `for loss' and `damages' were removed from R.C. 3937.18(A) and (A)(1), then the statute would have precisely the meaning that appellee suggests. Thus, appellee's interpretation of the statute renders the words `for loss' and `damages' superfluous. Such a result contravenes the general rule of statutory construction codified under R.C. 1.47(B), which provides that the General Assembly, in enacting a statute, intends that the entire statute be effective." Id. at 32.
 {¶ 48} The version of R.C. § 3937.18(A) involved in the instant case is the subsequent revision after the version reviewed in Moore, contained in Am.Sub.H.B. No. 261, effective September 3, 1997. This version of R.C. § 3937.18(A) states the following:
 {¶ 49} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy forloss due to bodily injury or death suffered by such insureds
[prior version: "persons"]:
 {¶ 50} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds [prior version: "persons insured"] thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy. * * *
 {¶ 51} "(2) Underinsured motorist coverage * * * shall provide protection for insureds thereunder against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy * * *." (Emphasis added.)
 {¶ 52} The relevant changes between the 1997 version of R.C. § 3937.18(A) and the language contained in 1994 version are noted within the text. The words "for loss" and "damages" were not deleted from the 1997 version of the statute. Moore held that if the words "for loss" and "damages" were removed from the statute, then the statute would allow UM/UIM coverage to be restricted to situations in which an insured himself or herself has sustained bodily injury or death. Since the words "for loss" and "damages" were not removed in the 1997 version of R.C. §3937.18(A), the Sexton and Moore holdings presumably continue to apply to the 1997 version of the statute. The words "for loss" and "damages" were not removed from the statute until Sub.S.B. No. 267, effective September 21, 2000.
 {¶ 53} It is interesting to note that the Moore case was decided on February 16, 2000, over two years after the effective date of Am.Sub.H.B. No. 261. Although Moore was interpreting a 1994 version of R.C. § 3937.18(A), the Supreme Court must have been aware that the 1997 version of the statute contained the same key words and phrases, namely "for loss" and "damages," that the Court was interpreting pursuant to the 1994 version of the statute.
 {¶ 54} Although Appellant contends that the Ohio Supreme Court has never addressed the 1997 version of R.C. § 3937.18(A) with respect to Sexton/Moore claims, the Moore opinion specifically addressed the manner in which the statute would need to be changed in order to overcome the interpretation imposed by the Sexton/Moore opinions. The 1997 version did not make the changes delineated in Moore. Appellant essentially seeks to have this Court overrule an Ohio Supreme Court mandate by treating the 1997 version of the statute as if it had no interpretative history.
 {¶ 55} Appellant argues that the legislature's decision to change the word "persons" to "insureds" at the end of the first full paragraph of R.C. § 3937.18(A) completely changed the meaning of the statute with respect to Sexton/Moore claims. The 1994 version stated: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such persons." The 1997 version reads: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds." Appellant contends that the 1997 version can only be interpreted as limiting coverage to insureds who suffer bodily injury or death.
 {¶ 56} Upon closer analysis of the Ohio Supreme Court's interpretations of prior versions of R.C. § 3937.18(A), it is our opinion that the changes made to the statute in 1997 would not have affected the analysis used in either Sexton or Moore. In both opinions, the Supreme Court held that the statute was remedial legislation and must be construed liberally to provide coverage for persons injured by uninsured and underinsured motorists. Sexton at 434, 23 O.O.3d 385, 433 N.E.2d 555;Moore at 31, 723 N.E.2d 97. Both cases understood that the purpose of the statute was to protect insured persons. As noted earlier, the first essential element of a Sexton claim is that there be an insured person.
 {¶ 57} Both cases held that the statute was ambiguous in its use of the phrase "bodily injury or death." Sexton at 434, 23 O.O.3d 385, 433 N.E.2d 555; Moore at 31, 723 N.E.2d 97. The phrase "bodily injury or death" could relate to the general type of damages and loss that an insured had sustained, or it could describe a much narrower range of losses that could be compensated, i.e., losses relating to the bodily injury or deathof an insured party. Both Supreme Court opinions chose the former interpretation to resolve the ambiguity, and held that the type of UIM coverage available to an insured must relate to bodily injury or death, but not necessarily the insured's own bodily injury or death.
 {¶ 58} The same ambiguity occurs in the 1997 version of the statute. The key section of the statute is: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds." On the one hand, the statute can be interpreted as providing UIM coverage to an insured for loss suffered by the insured, if such loss is somehow related to bodily injury or death. This reading emphasizes the words in the statute in the following way: "unless both of the following coverages areoffered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds."
 {¶ 59} On the other hand, the statute can be interpreted to provide coverage only when an insured has suffered bodily injury or death. This interpretation emphasizes the following words: "unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or deathsuffered by such insureds."
 {¶ 60} Both of these readings are plausible. Given the choice, the remedial nature of the statute requires an interpretation in favor of granting UIM coverage consistent withSexton and Moore.
 {¶ 61} Appellant appears to assume that the legislative intent in changing the word "persons" to the word "insureds" could only be interpreted as a negative response to the Supreme Court's prior interpretation of R.C. § 3937.18(A) in Sexton andMoore. In point of fact, statutes are regularly changed because the legislature agrees with or wishes to codify a Supreme Court interpretation. A classic example of this occurred when the legislature passed R.C. § 3119.82 in 2001, which codified the Supreme Court's common law procedure for allocating the income tax dependency credit in divorce cases, as set forth in Singerv. Dickinson (1992), 63 Ohio St.3d 408, 588 N.E.2d 806. Statutes are also changed for many reasons having nothing to do with Ohio Supreme Court opinions.
 {¶ 62} Furthermore, in Moore the Supreme Court based its decision, in part, on the fact that the uncodified commentary to the 1994 changes to R.C. § 3937.18 did not specifically state that the changes were intended to overrule Sexton. Moore at 31, 723 N.E.2d 97. The Moore opinion noted that the legislature published comments to the 1994 revisions of R.C. § 3937.18
indicating the legislature's intent to overrule the Supreme Court's holding in Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500, 620 N.E.2d 809. No similar comments were published with respect to overruling Sexton either in 1994 or 1997. In fact, the legislature did not indicate its intent to overrule Sexton until October 31, 2001, as part of the comments included with the revisions of R.C. § 3937.18 in Am.Sub.S.B. 97.
 {¶ 63} The trial court in this case was correct in applyingSexton and Moore to the 1997 version of R.C. § 3937.18(A) applicable to the Personal Auto policy. Appellee parents (and other family members) are entitled to UIM coverage for losses associated with the death of their son, Richard. Appellant's assignment of error is overruled and the judgment of the trial court is affirmed in Appeal No. 2002CA00078.
 {¶ 64} Pursuant to the above, in Appeal No. 2002CA00073, we reverse the February 6, 2002, decision to grant summary judgment to Tamara Bernabei, and we further grant Appellant's motion for summary judgment pursuant to the IBEW policy No. CAP 500 9118 C1. The decedent Richard Bernabei was not an insured under the IBEW policy, and Richard Bernabei's related family members cannot claim to be insureds, based on the principles set forth in the recent Galatis case issued by the Ohio Supreme Court. In Appeal No. 2002CA00078, we affirm the February 6, 2002, judgment entry granting summary judgment to Appellees Robert and Shirley Bernabei, et al. on their Sexton/Moore claim under Policy No. HRA 696 49 73 issued by Cincinnati Insurance Companies.
Donofrio, J., concurs.
Vukovich, J., concurs.