OPINION
{¶ 1} James Peffley appeals from the judgment of the Montgomery County Common Pleas Court in favor of Motorists Mutual Insurance Co. (hereinafter "Motorists"). *Page 2 
 {¶ 2} On December 3, 2001, Lee Peffley died as a result of an automobile accident involving Myron Morris, who was insured by Grange Insurance Company. The estate of Lee Peffley settled with Morris for his policy limits of One-Hundred Thousand Dollars ($100,000). James Peffley, Lee Peffley's son, made a claim for coverage under his own UM/UIM coverage with his own insurance company, "Motorists," although he was not involved in the accident, nor was he a resident relative in his father's home. When Motorists denied coverage, Peffley filed a declaratory judgment action on March 4, 2003, seeking a declaration from the court that Motorists provide underinsurance coverage for its policy limits to James. He also sought punitive damages contending that Motorists refused to provide coverage as a result of bad faith. Peffley also sued Evarts-Tremaine-Flicker Co., agents for Motorists in Montgomery County, for the bad-faith claim as well. The pertinent portion of the November 1, 2002 Motorists' insurance policy provides as follows: "(A) We will pay compensatory damages which an insured is legally entitled to recover from the owner of[sic] operator of: (1) An insured[sic] motor vehicle * * * because of bodily injury (a) sustained by an insured; and (b) caused by an accident."
 {¶ 3} After Motorists answered Peffley's complaint denying coverage, the matter was referred to a magistrate by the trial court. In its answer, Motorists contended that S.B. 267, effective September 21, 2000, permitted Motorists to limit underinsured motorist coverage to an insured who suffered bodily injury. Peffley and Motorists presented cross-summary judgment motions regarding whether UM/UIM coverage was available under the policy. On August 26, 2003, the magistrate issued a decision that found coverage did not apply, resulting in a recommendation that summary judgment be *Page 3 
granted for Motorists and denied for Peffley. The magistrate found that Peffley originally purchased the automobile policy in July 1988 and renewed it every six months thereafter. The magistrate found that the policy was last renewed in November 2001, prior to the accident resulting in Lee Peffley's death in December 2001.
 {¶ 4} Peffley objected to the magistrate's report specifically arguing that Peffley's insurance contract had a two-year guarantee period which would not expire until July 2002 and, therefore, S.B. 267 could not apply to his policy. Motorists responded that S.B. 267 limited underinsured coverage to bodily-injured insured because Peffley entered into a new contract of insurance each time he renewed the policy. Motorists pointed to the specific provisions of S.B. 267 that permitted statutory changes to be applied to renewed policies. Motorists argued that S.B. 267 was meant to overrule Wolfe v. Wolfe (2000),88 Ohio St.3d 246, 725 N.E.2d 261. On January 7, 2004, the trial court sustained Peffley's objections to the magistrate's report and recommendations. The trial court found that pursuant to Wolfe, a prior version of R.C.3937.31(A) applied, and S.B. 267 could not be applied to permit Motorists to limit the insurance coverage available to Peffley.
 {¶ 5} On February 5, 2004, Motorists appealed to this court in Case No. 20356. On May 21, 2004, in an unpublished decision, we noted that although the parties jointly argued for jurisdiction, "this court determines its own jurisdiction, and * * * we conclude that the appeal does not arise from a final order pursuant to R.C. 2505.02 and must be dismissed." (Appeal Dismissal at 1.) We "conclude[d] that the May 21, 2004 decision did not affect a substantial right and is not a finalappealable order pursuant to R.C. 2505.02(B)(2), or any other provision of 2505.02." (Emphasis added.) (Appeal *Page 4 
Dismissal at 5.) In reaching our conclusion, we expressly noted:
 {¶ 6} "In the present case, Peffley sought in his declaratory judgment action a determination of his rights and Motorists' obligations under the policy, as well as a declaration that Motorist [sic] breached the contract by denying coverage in bad faith. The entry appealed onlyresolves the summary judgment motions as it relates to Peffley's rightsas an insured under the policy. The entry does not determine Motorists' obligations under the policy regarding the amount of coverage Peffley is entitled to, nor does it resolve the bad faith portion of the claim against Motorists including the demand for punitive damages, attorneys fees, and costs." (Emphasis added). (Id. at 4.)
 {¶ 7} Although jurisdiction "returned" to the trial court in May 2004, the case sub judice did not "reactivate" until 2005. After the voluntary dismissal of Defendant Evarts-Tremaine-Flicker Co. in June 2005, Peffley filed a Motion for Court to Set Hearing for Damages on October 20, 2005. As a counter-motion, Motorists filed a Motion for Reconsideration (hereinafter the "First Mot. Recon."), which the parties fully briefed.
 {¶ 8} On October 31, 2005, Motorists moved the trial court to reconsider its decision due to the intervening decision of this court inArn v. McLean, 159 Ohio App.3d 662, 2005-Ohio-654, 825 N.E.2d 181. On March 6, 2006, the trial court denied Motorists' reconsideration motion and set a damages hearing for May 19, 2006. In the interim, Peffley moved to enforce an alleged settlement of the litigation which the magistrate recommended be denied. Motorists then filed a renewed motion for reconsideration and summary judgment on August 23, 2006 upon the authority of Hedges v. Nationwide Mut. Ins. Co., 109 Ohio St.3d 70,2006-Ohio-1926, 846 N.E.2d 16. On March 2, 2007, the trial court granted Motorists' motion for reconsideration and *Page 5 
entered summary judgment in Motorists' favor on Peffley's claims. This appeal followed.
 {¶ 9} In a single assignment of error, Peffley argues that the trial court abused its discretion in reconsidering its ruling previously made more than three years earlier. Specifically, Peffley argues that the trial court erred and abused its discretion in abandoning the "law of the case" of its previous ruling and ignoring the doctrine of waiver by allowing Motorists to make an argument in its reconsideration motion it had not made earlier. Motorists argues that the trial court was free to reconsider its previous grant of summary judgment to Peffley because its order was interlocutory and, therefore, subject to revision.
 {¶ 10} Some case history is useful in appreciating why the trial court experienced difficulty in arriving at a correct resolution of this litigation. In 1982, the Ohio Supreme Court held that R.C. 3937.18(A) did not specify that an insured must sustain bodily injury in order to recover damages. Sexton v. State Farm Mut. Auto. Ins. Co. (1982),69 Ohio St.2d 431, 23 O.O.3d 385, 433 N.E.2d 555. Subsequent to theSexton decision, the General Assembly in Am. Sub. S.B. 20 amended R.C.3937.18. In 2000, the Ohio Supreme Court in Moore v. State Auto Mut.Ins. Co., 88 Ohio St.3d 27, 723 N.E.2d 97, was asked to determine whether the amendment in Am. Sub. S.B. 20 altered the meaning of R.C.3937.18 in such a way as to permit insurers to limit underinsured motorist coverage to accidents in which an insured sustains bodily injury. The Ohio Supreme Court held that it did not. Justice Douglas wrote on behalf of a sharply divided court, "Finally, we note that, in addition to the above-mentioned amendments to R.C. 3937.18(A)(1), Am. Sub. S.B. No. 20 also contains amendments to R.C. 3937.18(A)(2). *Page 6 
R.C. 3937.18(A)(2) addresses underinsured motorist coverage. This is relevant to our discussion in this case because in the uncodified portion of Am. Sub. S.B. No. 20, the General Assembly explicitly set forth that its intent in amending R.C. 3937.18(A)(2) was to supersede the effect of this court's holding in Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500, 620 N.E.2d 809. Section 7, Am. Sub. S.B. No. 20, 145 Ohio Laws, Part I, 238. We believe that if the General Assembly had intended the changes in subsection (A)(1) to supersede the court's holding in Sexton, it would have made its intentions equally clear by declaring such in the uncodified portions of the law.
 {¶ 11} "However, we find nothing in the uncodified section of Am. Sub. S.B. No. 20 that indicates that the amendments to R.C.3937.18(A)(1) were intended to supersede our decision inSexton. We therefore reject appellee's assertion that the amendments were clearly meant to supersede Sexton." Id. at 32.
 {¶ 12} R.C. 3937.18 was again amended in 1997 by H.B. 261 to address the ambiguity in R.C. 31917.18. A number of appellate districts concluded that changing the word "persons" in the S.B. version to "insureds" in the H.B. 261 version of the statute did not cure the ambiguity. See Bernabei v. Cincinnati Ins. Cos., Stark App. Nos. 2002CA00078 and 2002CA00073, 2004-Ohio-4939; Hedges v. Nationwide Mut.Ins. Co., Franklin App. No. 04AP-423, 2004-Ohio-6723; Adams v.Crider, Mercer App. Nos. 10-02-18 and 10-02-19, 2004-Ohio-535;Kotlarczyk v. State Farm Mut. Auto. Ins. Co., Lucas App. No. 6-03-1103,2004-Ohio-3447; and Aldrich v. Pacific Indemn. Co., Columbiana App. No. 02 CO 54, 2004-Ohio-1546.
 {¶ 13} On May 14, 2004, this Court held that Moore did not apply to the H.B. 261 version of R.C. 3937.18. Cincinnati Equitable Ins. Co. v.Wells, Montgomery App. No. *Page 7 
20286, 2004-Ohio-2418. The Ohio Supreme Court then agreed to resolve the conflict and held that Moore did not apply to the version of R.C.3937.18 (A) as amended by H.B. 261 in 1997. Hedges, 109 Ohio St.3d at syllabus.
 {¶ 14} Before the supreme court ruled in Hedges, however, the General Assembly again amended R.C. 3937.18(A) in S.B. 267 effective September 21, 2000. This time the legislature again limited UM/UIM exposure to bodily damages incurred by an injured insured. To remove any doubt about its intentions, the General Assembly stated its explicit intention to supersede Sexton and Moore in uncodified legislation accompanying amendments to R.C. 3937.18(A) in Sub. S.B. 267.
 {¶ 15} Further complicating matters, the Ohio Supreme Court inWolfe v. Wolfe (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, held that the guarantee period mandated by R.C. 3937.31(A) was not limited solely to the first two years following the institution of coverage, and the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance. Id at paragraph two and three of the syllabus.
 {¶ 16} In Hopkins v. Dyer, 104 Ohio St.3d 461, 2004-Ohio-6769,820 N.E.2d 329, Justice Stratton discussed the doctrine of the law of the case. She noted that "[t]he law of the case is a longstanding doctrine in Ohio jurisprudence. `[T]he doctrine provides that the decisionof a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.' Nolan v. Nolan, 11 Ohio St.3d at 3, 11
OBR 1, 462 N.E.2d 410. The doctrine is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior *Page 8 
courts as designed by the Ohio Constitution. State ex rel. Potain v.Mathews (1979), 59 Ohio St.2d 29, 32, 13 O.O.3d 17, 391 N.E.2d 343. It is considered a rule of practice, not a binding rule of substantive law.Hubbard ex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402, 404,659 N.E.2d 781." (Emphasis added.) Id. At ¶ 15. It is noteworthy that there was no previous appeal by one of these parties to a reviewing court which established the "law of the case" which the trial court was bound to apply upon remand. Also, Civ.R. 54(B) expressly provides that the trial court's order or other form of decision is "subject to revision" at any time before the entry of judgment adjudicating all claims and the rights and liabilities of all the parties. Peffley's argument that the law of this case was ignored by the trial court in granting Motorists its summary judgment is not persuasive.
 {¶ 17} Peffley also argues that the trial court erred in not looking to Civ.R. 60(B) for guidance in deciding whether to grant a motion to reconsider a non-final order. Peffley cites our previous opinion inBaker v. Schuler, Clark App. No. 02 CA 0020, 2002-Ohio-5386. In that case, the Appellant contended the trial court erred in setting aside an interlocutory default judgment against one of the party defendants. We found that the trial court properly vacated the default judgment, applying the applicable standards for reconsideration of the trial court's interlocutory order. Id. At ¶ 23.
 {¶ 18} Judge Grady wrote, on behalf of this court in Baker, the following: "The power conferred on the court by Civ.R. 54(B) to vacate an interlocutory order is not subject to the provisions of Civ.R. 60(B), which applies only to final judgments and orders. It is suggested that when an interlocutory order is modified or vacated the standard for a common law motion for reconsideration, the `apparent justice' standard, *Page 9 
ought to apply, though the court should also be guided by Civ.R. 60(B) standards, albeit applied less rigorously." Id. At ¶ 22, citing Klein/Darling, Ohio Civil Practice (1997) Section AT 54-3.
 {¶ 19} Motorists argues that the trial court properly applied the applicable standards suggested in Baker for reconsideration of an interlocutory ruling. Motorists argues that neither manifest error of law nor newly discovered evidence are the only grounds for reconsidering an interlocutory ruling. Motorists argues that "apparent justice" was served by the court's reconsidering its original summary judgment decision since Peffley was not entitled to UM/UIM coverage under the applicable policy because Motorists was authorized by R.C. 3937.18 to exclude coverage for insured persons who do not incur bodily damage in an automobile accident. We agree.
 {¶ 20} Lastly, Peffley argues that the trial court abused its discretion in reconsidering its interlocutory decision because Motorists "waived" its right to argue that R.C. 3937.18, as amended by H.B. 261 effective September 3, 1997, did not require UM/UIM coverage for an insured's damages incurred as a result of the death of a relative who was not insured under the same policy. Peffley notes that Motorists not only failed to make this argument, but it also expressly conceded that under R.C. 3937.18 as it existed prior to the amendments in 2000 by S.B. 267, the law did not require nor authorize an insurance policy to limit UM/UIM coverage to damages incurred by an injured insured. Peffley refers to Motorists' memorandum in opposition to Peffley objections to magistrate's recommendation dated July 30, 2003:
 {¶ 21} "Prior to the S.B. 267 version of R.C. 3937.18, an insurance policy could not limit UM/UIM coverage to only those insureds who suffer bodily injury in an accident. *Page 10 
(Citations omitted). Therefore, insureds could recover UM/UIM even when, as in this case, a non-resident family member was killed in a car accident."
 {¶ 22} Peffley argues that the above-noted concession is in the nature of a judicial admission or at least "invited error." Peffley notes that the legal argument that prevailed in Hedges was available to Motorists throughout the litigation. He notes this Court had decided on May 14, 2004, that H.B. 261 permitted insurance coverage to be restricted to losses arising from bodily injuries which are suffered by the policy's insureds.
 {¶ 23} For its part, Motorists argues that it did not waive its right to claim that Peffley was not covered by his own UM/UIM coverage with Motorists because it always asserted that Peffley was not covered by his Motorists' policy because he suffered no bodily injury in the accident claiming his father's life, and no automobile covered in his Motorists' policy was involved in the accident. (See Motorists' Answer at page 2.)
 {¶ 24} Motorists notes that the pertinent statutory language in H.B. 261 and 267 are nearly identical, and because the General Assembly expressly stated the pertinent language in S.B. 267 was intended to preclude Sexton-Moore claims like Peffley's, it argued that H.B. 267 precluded coverage for Peffley. Motorists notes that the language in H.B. 261 that the supreme court held in Hedges permitted the very exclusion relied upon by Motorists is identical to the language in S.B. 267. In other words, Motorists argues that Peffley's "new argument" theory is a distinction without a difference.
 {¶ 25} Finally, Motorists notes that the doctrine of waiver provides that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call to the trial court's attention at a *Page 11 
time when such error could have been avoided or corrected by the trial court. McKimm v. Ohio Elections Comm. (2000), 89 Ohio St.3d 139, 149,729 N.E.2d 364.
 {¶ 26} Peffley argues the supreme court case of Gallagher v. ClevelandBrowns Football Co. (1996), 74 Ohio St.3d 427, 659 N.E.2d 1232, supports his position that Motorists waived its argument that H.B. 261 permitted Motorists to deny Peffley coverage under its UM/UIM coverage. InGallagher, the plaintiff was injured while operating a video camera on the sideline of the field when two players chasing a pass collided with him. Id. at 428. Gallagher claimed in his lawsuit that the Browns were negligent in failing to provide him a safe place to film the games. Id. The Browns answered the complaint and raised the affirmative defense of assumption of risk. Id.
 {¶ 27} The case in Gallagher proceeded to trial and at the close of the evidence, the Browns moved for a directed verdict contending that Gallagher was a licensee to whom they had not breached any duty of care. Id. The trial court denied the Browns' motion. Id. at 429. The trial court instructed the jury on the duty of care owed to invitees, licensees and trespassers, and on the standards applicable to determining if a breach of duty occurred. Id. The court also instructed that implied (secondary) assumption of risk could reduce appellant's recovery if the jury decided that appellees were negligent. Id. Appellees did not request an instruction on primary assumption of risk, and none was given. Id.
 {¶ 28} The jury returned a verdict in appellant's favor for $800,000, and also in favor of appellant's insurer for $106,000. Id. The jury determined that appellant was thirty-five percent responsible for his own injuries due to contributory negligence/implied assumption of risk. Id. Under comparative fault principles, the recoveries were reduced *Page 12 
accordingly. Id.
 {¶ 29} After the trial court entered judgment on the verdict, appellees moved for judgment notwithstanding the verdict, or in the alternative for a new trial. Id. At this point, for the first time, appellees urged that they owed no duty to appellant, so that any judgment against them was barred by the doctrine of primary assumption of risk. Id. The trial court denied the motion. Id.
 {¶ 30} In affirming the trial court, the Supreme Court held that the Browns waived primary assumption of risk as a complete defense when they failed to raise it in a timely manner. Id. at 437. The court found that while the Browns avoided waiver by virtue of their generic answer that plaintiffs claim was barred by assumption of risk, they still had a responsibility to specifically raise primary assumption sometime before the case went to the jury, and to put appellant and the court on notice that primary assumption of risk would be an issue in the litigation. Id. At 433. The court noted that the Browns conceded they owed the duty to refrain from willful and wanton conduct to Gallagher since he was a licensee. Id. at 434. The court noted that the principle that a defendant waives a defense he or she fails to raise is especially applicable when the defendant has an available defense that can prevent the plaintiff from making a prima facie case. Id.
 {¶ 31} In Gallagher, the Browns never raised the complete defense of primary assumption of risk until the jury returned its verdict against them, and the judge entered a judgment upon the verdict. In this matter, Motorists consistently argued that the Sexton-Moore decisions did not preclude it from excluding UM/UIM coverage in its insurance policies for those insureds who were not injured in the accident with the *Page 13 
underinsured tort feasor. In its answer to Peffley's complaint, Motorists asserted that Peffley's claims were barred by the express terms of the Motorists' policy which required that its insured suffer bodily injury, and by the terms of S.B. 267 amendments to Ohio's UM/UIM statute, R.C. 3937.18.
 {¶ 32} Motorists moved for summary judgment arguing that the General Assembly intended S.B. 267, requiring the insured to suffer a bodily injury to recover, to go into effect and apply to every insurance contract subsequently entered into after September 19, 2000, whether through renewal or a new policy. It argued that S.B. 267 applied to Peffley since he renewed his policy on November 1, 2001, and Peffley's father's accident occurred on November 24, 2001. Peffley moved for summary judgment and argued that S.B. 267 could not apply to his insurance policy because he had a guaranteed two-year contract of insurance until July 11, 2002 pursuant to the supreme court's holding inWolfe.
 {¶ 33} The magistrate found Motorists' argument more persuasive and recommended the trial court enter summary judgment for Motorists. After Peffley objected to the magistrate's recommendation, the trial court overruled the magistrate, finding that while S.B. 267 clearly intended to overrule the Sexton-Moore holdings, the legislation did not expressly reject the holding in Wolfe. Motorists' premature appeal followed.
 {¶ 34} When the lawsuit returned to the trial court, Motorists moved for reconsideration of the trial court's ruling. Motorists brought to the attention of the trial court this court's holding in Arn v.McLean, 159 Ohio App.3d 662, 2005-Ohio-654, 825 N.E.2d 181. InArn, we held that the amendments to R.C. 3937.31(E) made by S.B. *Page 14 
267, effective September 21, 2000, allowing insurers to modify terms of automobile policies that begin their period during two-year guarantee period, applied and, thus, the insurer was not required in a renewal policy to offer UIM coverage, thus abrogating the effect ofWolfe on renewals after the effective date of S.B. 267. On March 6, 2006, the trial court overruled Motorists' motion to reconsider its previous ruling. It is not clear why the trial court denied Motorists' first reconsideration motion since Arn was binding precedent in this appellate district, and it was uncontested that Peffley had renewed his policy in November 2001 after S.B. 267 had become effective. In any event, over the next few months, the parties engaged in settlement negotiations, and Peffley sought to enforce an alleged settlement of this matter. On August 4, 2006, the magistrate found that Peffley's motion to enforce the alleged settlement should be denied.
 {¶ 35} On August 23, 2006, Motorists again moved for reconsideration and renewed its motion for summary judgment citing the recent decision of the Ohio Supreme Court in Hedges v. Nationwide, supra. Peffley argues that Hedges should not have caused the trial court to reconsider its previous ruling because the court was interpreting whetherSexton-Moore claims were precluded by the provisions of H.B. 261, and Motorists had argued that S.B. 267 applied to Peffley's renewed policy. Motorists, for its part, argues that Hedges was important because S.B. 267 is virtually identical to the pertinent provisions of H.B. 261 and the court held Sexton-Moore claims only applied to S.B. 20. We agree.
 {¶ 36} The pertinent provisions of H.B. 261, effective September 3, 1997, provide *Page 15 
as follows:[1]
 {¶ 37} "Sec. 3937.18. (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are-provided- +offered+ to persons insured under the policy for loss due to bodily injury or death suffered by such-persons- +insureds+:
 {¶ 38} "(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury+, sickness,+ or +disease, including+ death under provisions approved by the superintendent of insurance, for the protection of -persons insured- + insureds+
thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy."
 {¶ 39} The pertinent provisions of S.B. 267, effective September 21, 2000, provide as follows:[2]
 {¶ 40} "Sec. 3937.18. (A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any *Page 16 
motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy -for loss- due to bodily injury or death suffered by such insureds:
 {¶ 41} "(1) Uninsured motorists coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover -damages- from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy."
 {¶ 42} We agree with the trial court that it had plenary power in entertaining a motion for reconsideration prior to entering a final judgment. Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525, 535,706 N.E.2d 825. A reviewing court, therefore, should not reverse a trial court's judgment absent an abuse of discretion. Piccuito v. Lucas Cty.Bd. Commrs. (1990), 69 Ohio App.3d 789, 796, 591 N.E.2d 1287. Abuse of discretion means that the trial court acted arbitrarily or unreasonably in granting the reconsideration motion. The trial court did not abuse its discretion in granting Motorists' motion to reconsider. We also agree with the trial court that Motorists did not waive its right to raise the applicability of the Hedges decision because it had consistently argued that Motorists had a right to exclude underinsured coverage unless the insured sustained a bodily injury. The Appellant's assignment of error is Overruled. Judgment *Page 17 
affirmed.
FAIN and DONOVAN, JJ., concur.
[1] Additions are indicated by +TEXT+; deletions by-TEXT-.
[2] See footnote 1. *Page 1